MATTIE GARDNER v. SUPREME CAMP OF THE AMERICAN WOODMEN, et als.

Western Section. December 6, 1929.

Petition for Certiorari denied by Supreme Court, March 15, 1930.

Winchester, Knapp & Dearman, of Memphis, for appellant.
W. H. Fisher, of Memphis, for Mattie Gardner.
Randolph & Randolph and Clarence E. Clifton, all of Memphis, for Bank of Commerce & Trust Co.

SENTER, J.   This is a suit by Mattie Gardner against the Supreme Camp of the American Woodmen, a fraternal order, with its principal office in Denver, Colorado; and the Bank of Commerce & Trust Co., and the Union & Planters Bank & Trust Co., both banks engaged in the banking business in the City of Memphis. The suit is to recover the proceeds of an insurance certificate in the sum of $600, issued by the American Woodmen on the life of

Richard Gardner, and payable to his mother, the complainant, Mattie Gardner.

The bill seeks to recover the proceeds of said life insurance certificate on the life of her son from the three defendants named. From the allegations in the bill, the recovery is sought against the American Woodmen on the certificate of insurance issued by said fraternal order on the life of her said deceased son; it being alleged that the American Woodmen had not paid the death certificate to her. The recovery is sought against the Bank of Commerce & Trust Company upon the allegations contained in the bill that said bank cashed the check drawn by the American Woodmen in complainant's favor on the forged endorsement of her son-in-law, E. T. Alexander, who deposited the proceeds of the check obtained by him by said forged endorsement of the name of Mattie Gardner, in said Bank of Commerce & Trust Co., and made said deposit in the name of himself and his wife, jointly, his wife being the daughter of Mattie Gardner. The recovery is sought against the Union Planters Bank & Trust Company for the sum of $550, representing that amount of the proceeds of said check. The recovery is sought against the Union & Planters Bank & Trust Co., on the alleged grounds that after E. T. Alexander had forged the endorsement of complainant to the check issued by the American Woodmen in favor of Mattie Gardner in payment of the benefit certificate, and had deposited the $600 to the joint credit of himself and wife in the said Bank of Commerce & Trust Co., and had checked out of said deposit the sum of $50, that E. T. Alexander then drew out the remaining $550 on his check payable to Mattie Gardner and deposited said check to the credit of Mattie Gardner in the Union & Planters Bank & Trust Co., but without her knowledge or consent, and that the Union & Planters Bank & Trust Co., paid out said $550 on checks to which her name had been forged, and without her knowledge, acquiescence and consent.

At the hearing of the cause the Chancellor found the facts in favor of the complainant, and decreed that the American Woodmen was not liable, since the complainant had joined the other two defendants in the suit and was seeking a recovery against the respective banks for the amount of the check issued by the American Woodmen in her favor and cashed on the forged endorsement by the Bank of Commerce & Trust Co. The Chancellor further held, and so decreed, that under the facts, the Bank of Commerce & Trust Company was liable for the $50 paid out to Alexander. The Chancellor further held that the remainder amounting to $550 having been drawn out of the Bank of Commerce & Trust Co., by E. T. Alexander and deposited by him in the Union & Planters Bank & Trust Co., to the credit of Mattie Gardner, and paid

out on the forged checks of Alexander's wife, the Union & Planters Bank & Trust Co., was liable to complainant for the $550, and decreed accordingly.

From this decree the Union & Planters Bank & Trust Co., prayed and was granted an appeal to this court, or rather from so much of said decree as decreed· a judgment in favor of complainant against said bank. The appeal was prayed and granted and has been duly perfected in this court, and errors assigned. The Bank of Commerce & Trust Co., did not appeal from the decree against it.

The death of Mattie Gardner was duly suggested and admitted in this court, and the administrator of Mattie Gardner has filed. a petition for a writ of error from so much of the decree as dismissed the bill as to the American Woodmen, and limited the judgment against the Bank of Commerce & Trust Co., to $50, and has assigned errors.

The record contains a concise statement of the facts as found by the Chancellor. We fully concur in the finding of the facts as found by the Chancellor, and which are as follows:

"1. Richard Gardner was the son of complainant, Mattie Gardner. He had a certificate of insurance in the sum of $600 issued by the American Woodmen in favor of his mother. He died August 31, 1925. The necessary proofs of death were forwarded to the Supreme Camp of the American Woodmen, and on November 25, 1925, it mailed its check for $600, drawn on a Denver bank, payable to the order of Mattie Gardner, to E. T. Alexander, Deputy Clerk of the Memphis Camp of the Order, at his office at 200 South Fourth Street in Memphis.

"2. ·E. T. Alexander was the son-in-law of Mattie Gardner, his wife, Mary Alexander, being her daughter. Richard Gardner was in bad health for about a year before his death, and E. T. Alexander kept his dues in the American Woodmen paid up, but after Richard's death he told complainant that the certificate had lapsed for non-payment of dues, and he and his wife, Mary, prepared the proofs of death in Mattie Gardner's name, and forwarded them to the Supreme Camp of the order. Mattie was an ignorant, illiterate negro woman, and in bad health, having suffered a sort of paralytic stroke at Richard's funeral. When the check for insurance was received by Alexander, he and his wife, Mary, forged Mattie Gardner's endorsement on it, as well as her signature to a receipt to the insurance company; and deposited the check in the Bank of Commerce & Trust Co., in an account which they opened in the name of Mr. and Mrs. E. T. Alexander.

"3. This account was opened on December 7, 1925. Mary Alexander was under the impression that checks against this account would have to be signed by E. T. Alexander and herself jointly; and when she learned that E. T. Alexander had the right to check against it she became dissatisfied; and they then agreed that they would draw out $550 and deposit it in Mattie's name in the Union & Planters Bank, leaving $50 in the Bank of Commerce & Trust Co., which was subsequently drawn out for the payment of certain items which they say was for Mattie's benefit. So on December 23, E. T. Alexander drew a check for $550 in favor of Mattie Gardner on said account and deposited this check in the main street branch of the Union & Planters Bank & Trust Co., in an account which he opened in the name of Mattie Gardner. The check was payable to Mattie Gardner or bearer, and bears the endorsement 'Credited to account of Mattie Gardner, Main Street Branch of Union & Planters Bank & Trust Co., by K. L. N. Teller.'

"4. E. T. Alexander had an account at the Main Street Branch of the Union & Planters Bank & Trust Co., and was known to Mr. Nazor, the teller, who opened the new account in the name of Mattie Gardner. When he opened the account he gave Alexander a signature card and instructed him to get Mattie Gardner's signature on it and return it to the bank. Mattie Gardner knew nothing of the matter, and Alexander did not get her signature on the card, but his wife Mary Alexander, wrote the name Mattie Gardner on the card and Alexander returned it to the bank as the signature of Mattie Gardner. The money was afterwards checked out by E. T. and Mary Alexander, on checks purporting to have been signed by Mattie Gardner but to which Mary Alexander had signed the name of Mattie Gardner; the signature on the checks corresponded with that on the signature card, all having been written by Mary Alexander.

"5. The signature of Mattie Gardner to the proof of death of Richard Gardner, her signature as endorser on the check of the American Woodmen, her signature to their receipt to the Woodmen for the $600 check, her signature on the signature card furnished to the Union & Planters Bank; and her signature to all the checks drawn on said account, were all forgeries, her signature in each of such instances having been written by Mary Alexander without any authority from Mattie Gardner and without her knowledge.

"6. Richard Gardner was an ex-soldier and had War Risk Insurance originally for $10,000; this lapsed for non-payment

of premiums, but he obtained a certificate of the Veteran's Bureau for its paid up value of $866 in favor of Mattie Gardner. E. T. Alexander and his wife had the correspondence with the Government with reference to the payment of this claim; forged Mattie Gardner's endorsement to the government voucher, and for this offense they were both indicted and convicted in the Federal court; but Mary Alexander was paroled, and at the time the proof was taken in this case she was out on probation. The first information that Mattie Gardner had that Alexander's wife had forged her endorsement on the American Woodmen check and collected that money was when she was told of it by a secret service man in Chicago, who was investigating the facts with reference to the prosecution of Alexander and his wife in the Federal court.

"7. Mattie Gardner lived with Alexander and his wife for about a year after Richard's death. In October, 1926, she went to live with a son in Chicago. After Alexander's conviction in the Federal court she went again to live with Mary Alexander, and was living with her at her home at the time the proof in this case was being taken. She owned a home of her own on Humber street, but went to live with Alexander and his wife after Richard's death because she was feeble and in bad health, and had no one to live with her."

Upon these facts the Chancellor held and decreed as hereinbefore set out.

The assignments of error are numerous, fourteen in number, and it is therefore inexpedient to take up and separately discuss each of these numerous assignments of error in the order in which they appear. We refer to the assignments of error by appellant, Union & Planters Bank & Trust Co. Appellant, in the brief filed, has reduced the assignments of error to six propositions of law.

The first is: "The signature upon which the depositor is to be bound and the bank is to disburse his money may be whatever they agree upon." The following authorities are cited by appellant in support of this proposition: Polizzoto v. Peoples Bank, 125 La. 70; McGee on Banks and Banking (3 Ed.), p. 311, Sec. 186; Newman v. State Bank, 123 N. Y. S. 926; Bank of Lawrenceville v. Rockmore & Co., 129 Ga. 588; 2 Morse on Banks and Banking (5 Ed.), Sec. 432, p. 22.

The second proposition contended for by appellant is: "It is not forgery for a party to assume a fictitious name." Citing in support of this proposition: Wiehl v. Roberson, 97 Tenn. 458; Meridian National Bank of Ind. v. First National Bank of Shelbyville, 34 N. E. 247; Lawrenceville v. Rockmore & Co., supra; David v. Williamsburg, 83 N. Y. 265; Horton on Criminal Law, Vol. 1,

p. 660; U. S. v. Liberty Ins. Bank, by the U. S. District Court of the Western Division of Ky., April 25, 1928; Corinth Bank & Trust Co. v. Security Nat. Bank, 148 Tenn. 136.

The third proposition of law by appellant is: "The relation of depositor and depositee cannot be created without a meeting of minds, one to propose and the other to accept. The assent of both parties is essential to an ordinary deposit. There must be privity of contract by the bank and depositor and the relation of banker and depositor cannot be created without the consent of the owner of the funds deposited." Citing in support 2 Michie on Banks and Banking, pp. 893, 897, Sec. 129.

The fourth proposition submitted by appellant is that: "The court has no jurisdiction of any matter not contained in the pleading, and if the Chancellor should assume to make a adjudication not justified by the pleadings, his decree would be void, even though the facts proved supported the decree. . . ." Under this proposition it is insisted that the pleadings did not allege negligence by the bank in not procuring the genuine signature to the card given by the bank to E. T. Alexander for the signature of Mattie Gardner, and there being no allegation of negligence a decree based upon negligence in that regard would be coram non judice. Citing authorities.

The fifth proposition of law is thus stated: "It is not sufficient to say that an act was done with a fraudulent intent; it must in its effects be 'injurious to the party complaining, otherwise he is not entitled to relief." Citing authorities.

The sixth and last of appellant's propositions of law is that: "The law does not recognize degrees of culpability between wrongdoers and will not apportion compensatory damages between them. They are alike guilty and responsible."

To the first proposition, to the effect that the signature upon which the depositor is to be bound and the bank is to disburse his money may be whatever they agree upon, we think is a fair statement of the rule, and is supported by the authorities cited by appellant hereinbefore referred to under this proposition. This is but a general statement of the rule, but we do not think it has any application to the facts presented by the record in this case. This is also true of the second proposition of appellant, to the effect that it is not forgery for a party to assume a fictitious name, and is also supported by the authorities cited by appellant hereinbefore referred to. We think that this rule has no application to the facts of this case.

We are of the opinion that the third proposition of law as contended for by appellant presents the real question for determination by this court. This proposition relates to the question, that

the relation of depositor and depositee cannot be created without a meeting of minds, one to propose and the other to accept; the assent of both parties being essential to an ordinary deposit; there must be privity of contract by the bank and depositor, and the relation of banker and depositor cannot be created without the consent of the owner of the funds deposited. In support of this proposition appellant cites the rule as stated in Vol. 2, Sec. 121, page 897, Michie on Banks & Banking. However, the same authority in the same section, after using substantially the language above stated, continues with the further statement:

"Title to money does not pass from the legal owner thereof to the bank, and the relation of creditor and debtor does not arise between them as to money deposited without his knowledge or consent. No one can create this relation between the owner of money and the bank without authority from the owner. In such case the person who holds the depositors money, and who deposits it without authority, is guilty of a conversion of the funds, and the bank receiving it is likewise guilty of conversion, at all events, if it is so related to the payee making the deposit as to effect it with notice. The legal relation then existing between the bank and the person whose money is put into it without authority is not that of a technical depositor, but merely the relation that exists between persons when one gets possession of the property of the other without authority of law, or wrongfully asserts dominion over it, falling distinctly within the definition of the conversion. And the rule is the same, even though the bank had no notice or knowledge at the time the deposit was made that it was the money of another."

In support of the above rule the following authorities are cited by the author, under footnote 73; Patek v. Patek, 166 Mich. 446, 131 N. W. 1101; Burnett v. First Nat. Bank, 38 Mich. 630; Union Stock Yards Nat. Bank v. Campbell, 2 Neb. 72, 96 N. W. 608; Van Allen v. American Nat. Bank, 52 N. Y. 1.

Among the cases cited in support of the rule that the relation of banker and depositor cannot be created without a meeting of minds, the assent of both parties being essential to the relation; that there must be privity of contract between the bank and the depositor, is the case of Winslow v. Harriman Iron Co., Tenn., 42 S. W. 698. The same authority on page 893 of the same volume, section 119, discusses the question of deposits made by one to the credit of another, and wherein it is said:

"A deposit of money by one person to the credit of another creates the relation of depositor and depositee between the bank and such other person where the deposit is made with

the consent of the latter, or where he ratifies the transaction, but the mere leaving of the money with the bank does not make the depositor a customer. . . ."

We are of the opinion that in order to create the relation of depositor and depositee, the deposit must have been made with the, consent of the depositor or ratified by some action of the depositor, under the authorities above referred to, and on principle. As to whether or not the relation of depositor and depositee existed between the complainant and the Union & Planters Bank & Trust Co., in the present case depends on whether the complainant ratified the deposit by any act of hers. It is alleged by complainant, in her bill, and she also testifies, that she had no knowledge of this deposit having been made in her name, until she received the information that the insurance money had been collected by her son-in-law from a Federal investigator, and upon investigation she learned of the deposit having been made in her name. It is therefore clear that she did not authorize the deposit to be made in her name, nor did she have any knowledge of the same, and hence there was no meeting of the minds between the bank and the complainant at the time the deposit was made. However, the bank accepted the deposit from E. T. Alexander of the check payable to complainant drawn by Alexander on the Bank of Commerce & Trust Co., and understood that the proceeds of the check was to be deposited in the name of and to the credit of the complainant.

If, under the facts of this case, the question of a ratification of the deposit by complainant is determinative of the question as to whether the relation of depositor and depositee existed, such ratification, if any, must depend entirely on the question as to whether her suit against the bank to recover this deposit operated as her ratification. This question is incidentially discussed in the case of Pickle v. Muse, 88 Tenn. 381. The opinion in that case was by Mr. Justice Lurton. The facts in that case, and the question of liability of the bank on a certain check drawn in favor of the complainant as the payee, and charged by the bank to the account of the drawer of the check, and which check was paid by the bank, but was not paid to the payee or to any endorsee of the payee, presented the question, among others, as to the right of the payee to sue the bank on this check, on the theory that the check had been properly drawn by the drawer, a debtor of the payee, in settlement of a debt, and the check was received by the bank and charged to the account of the drawer. The check was stamped paid by the bank, but there was no endorsement of the payee on the back of the check. The court in that case held, under the facts, that the bank was liable to the payee of the check, and that

there was such privity as entitled the complainant to maintain the suit on the check. The court held that under the facts as shown by the evidence that this check never came into the hands of Pickle, the payee; that someone undoubtedly received it from the drawer, Muse. The court said:

"By suing the bank upon this check, complainant may and does ratify the receipt of the check from Muse. It is as if it had been received by an agent for the use and benefit of the complainant. 'Omnis ratihabitio retrotrahitur et mandato priori aequiparatur,' a subsequent ratification has a retrospective effect, and is equivalent to a prior 'command." (Brooms Maxims, 837).

While we have been cited to no case where the above rule is invoked in support of the contention that the act of a depositor, where the deposit has been made in his name by another, without his consent or knowledge, in bringing the suit on the deposit, is such a ratification as to establish the relation of depositor and depositee, we see no good reason why the rule as above stated, and the maxim above quoted would not be applicable.

However, the question is further made by appellant that this deposit made by E. T. Alexander in the name of Mattie Gardner should be treated as a deposit made by Alexander in the name of a fictitious person, and that the signature card given to Alexander, and which was signed by Alexander's wife, she signing the name of Mattie Gardner to the signature card, did not constitute a forgery, but was signing the card in the name of the fictitious depositor. Numerous authorities are cited in support of the proposition that a deposit may be made by one under a fictitious name, and checks drawn on the deposit by the person making the same, in the name of the fictitious person, does not constitute forgery. The facts of this case would not warrant the application of deposits legitimately and legally made in the name of the fictitious person, and the drawing of checks by the true owner of the deposit in the name of the fictitious depositor. It appears from the facts in this case that the receiving teller of the Union & Planters Bank & Trust Co., knew E. T. Alexander, and understood that the deposit was being made in the name and to the credit of Mattie Gardner, as a real person, and not a fictitious person. It was for this reason that the signature card was given to Alexander with instructions that he procure Mattie Gardner to sign the same and when so signed by her that it be returned to the bank to the end that signatures to any checks drawn on the account could be compared with the signature on the signature card, as a means of detecting forgery. Under these facts it certainly cannot be considered that the effect of this deposit was a deposit by E. T. Alexander in the name of a

fictitious person, but for the use and benefit of E. T. Alexander. There are no facts in the record to warrant that conclusion or to sustain that contention.

On the question of the liability of the Union & Planters Bank & Trust Co., for the amount of this deposit, we are of the opinion, that it is not especially material whether it be considered that the relation of depositor and depositee existed. If such a relation did not exist, then we think it clear that the bank was in possession of funds belonging to the complainant which had been unlawfully converted by E. T. Alexander, and the bank being in the possession of the converted funds would be liable to account to complainant for the funds converted. Such is the rule as stated in 2 Michie on Banks & Banking, p. 898, wherein it is said:

"No one can create the relation between the owner of money and the bank without authority from the owner. In such case the person who holds a depositor's money and who deposits it without authority is guilty of a conversion of the fund, and the bank receiving it is likewise guilty of conversion, at all events, if it is so related to the payee making the deposit as to effect it with notice. The legal relation then existing between the bank and the person whose money is put into it without authority is not that of a technical depositor, but merely the relation that exists between persons when one gets possession of the property of another without authority of law, or wrongfully asserts dominion over it, falling distinctly within the definition of the conversion. And the rule is the same, even though the bank had no notice of knowledge at the time the deposit was made that it was the money of another."

Numerous cases are cited by the author in support of the above statement of the rule, among which are the cases of Winslow v. Harriman Iron Co., supra; Roach & Co. v. Turk, 56 Tenn. 708; Jackson Ins. Co. v. Cross, 56 Tenn. 283; Branner v. Branner, 69 Tenn. 101; Merchants Nat. Bank v. Trenholm & Son, 59 Tenn. 520; Brady v. Wasson, 53 Tenn. 131, and the Michigan case of Patek v. Patek, supra.

However, we are of the opinion that the relation of depositor and depositee between complainant and the bank existed under the facts of this case, and the ratification by complainant by her suit to recover this deposit. We are also of the opinion that the evidence preponderates in favor of the contention of complainant that the checks drawn on this deposit by Mary Alexander, wife of E. T. Alexander, and daughter of complainant, were forged checks and without the knowledge and consent of the complainant, Mattie Gardner. While there is considerable conflict in the evidence, it becomes largely a question of veracity as between Mattie Gardner, an ignorant col-

ored woman, and the designing E. T. Alexander and wife, Mary Alexander, both of whom are discredited under the facts in this record. They had perpetrated a similar fraud in collecting money from the Federal government on the life of her deceased son, and were convicted of forgery for their acts in connection therewith. Mattie Gardner stands unimpeached except by the evidence of this designing son-in-law and his wife, and is in no other way impeached, nor is she in any way discredited. The bank received this deposit with the understanding and knowledge that it was to Mattie Gardner, a real person, as hereinbefore discussed. It paid this money out on unauthorized, forged checks, and we think is thereby liable to complainant for the amount of the deposit, as decreed by the Chancellor.

On the question as to whether the Chancellor could grant the recovery because of the negligence of the bank in failing to see that the signature card given by it to Alexander to be signed by Mattie Gardner, bore her genuine signature, we think was warranted under the pleadings and the evidence. The bill set out all the facts, and under the facts as set out there is a prayer in the bill for general relief. But, the fact remains, that the bank did pay out this money on the unauthorized and forged checks of Mary Alexander, without the knowledge, acquiescence or consent of Mattie Gardner. In this view of the case, we find no error in the decree of the Chancellor, and it is therefore unnecessary to consider the questions made by the administrator in the petition for writ of error. We are of the opinion that where all the parties are before the court it was within the province of the Chancellor to determine the questions of liability of the respective defendants. It may be that the complainant could have maintained a separate action against the Bank of Commerce & Trust Co., for the full amount of the proceeds of the check issued in her favor by the fraternal order, and which check was paid by the Bank of Commerce & Trust Co., upon the forged endorsement by E. T. Alexander, and probably could have maintained a separate action against the Union & Planters Bank & Trust Co., on the deposit made in that bank by E. T. Alexander in her name and to her credit, and the money covering the deposit unlawfully and illegally paid out by the Union & Planters Bank & Trust Co. But the complainant has brought all the parties before the court in this suit, seeking to have it determined which of the defendants are liable to her and the amounts respectively. The bill is so drafted and contains the necessary allegations as to present for the determination of the Chancellor, and for this court on appeal, the right of complainant to recover from the defendants, or such of the defendants as may be ultimately liable to her.

64

We are of the opinion that the Chancellor reached a proper conclusion both as to the facts and the law. We find no error in the decree of the Chancellor and it is accordingly affirmed. Appellee, the Union & Planters Bank & Trust Co., and surety on appeal bond, will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.