HOME FEDERAL BANK, FSB, OF
MIDDLESBORO, KENTUCKY

v.

FIRST NATIONAL BANK OF LAFOL-
LETTE, TENNESSEE, et al.

Court of Appeals of Tennessee,
at Knoxville.

June 27, 2002 Session.

Sept. 10, 2002.

C. Mark Troutman, LaFollette, Tennessee, for the appellants, First National

Bank of LaFollette, Tennessee and C. Mark Troutman.

Joseph G. Coker, Jacksboro, Tennessee, for the appellees, Home Federal Bank, FSB, of Middlesboro, Kentucky.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

In this case of first impression, we are asked to determine the priority between (1) a first deed of trust on 12.58 acres of land in Campbell County—with a so-called dragnet clause—securing a fully-advanced-at-inception commercial loan of $235,040 and (2) a second deed of trust on the same property. The focus of the parties' dispute is upon the proceeds remaining from a foreclosure sale under the first deed of trust after all obligations relating to the original commercial loan of $235,040 had been paid in full. The holder of the first deed of trust claims that it is entitled to apply these remaining proceeds to partially satisfy a separate commercial debt owed to the beneficiary of the first deed of trust, which debt was incurred *after* the second deed of trust was recorded. The holder of the second deed of trust disagrees; it claims priority to these remaining funds by virtue of its deed of trust. The trial court found that the obligation secured by the second deed of trust has priority over the subsequent debt, which debt admittedly falls under the language of the first deed of trust's dragnet clause. The trial court also found that the notice of trustee's sale published in connection with the foreclosure on the subject property by the holder of the first deed of trust was deficient. The court went on to award the beneficiary of the second deed of trust $30,931.85, being the balance of the proceeds from the foreclosure sale after the beneficiary of the

first deed of trust had been fully paid for all monies due it in connection with the original indebtedness of $235,040. The holder of the first deed of trust appeals, challenging both of the trial court's holdings. The holder of the second deed of trust, on the other hand, argues that the trial court erred in refusing to award prejudgment interest. We vacate the trial court's judgment and remand for further proceedings.

### I.

■ At trial, the parties stipulated all of the material facts. Thus, the only questions before us pertain to legal issues. "[A]ppellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn.Ct.App.2001).

On December 9, 1997, Raymond L. Cox and his wife, Elaine M. Cox, executed a deed of trust ("first deed of trust") to C. Mark Troutman, trustee, securing payment of a promissory note to First National Bank of LaFollette, Tennessee ("holder/first deed of trust") in the principal amount of $235,040. The deed of trust transferred in trust the Coxes' 12.58 acres known as Alpine Manor subdivision. The full amount of the $235,040 loan was disbursed to or for the benefit of the Coxes on December 8, 1997. The deed of trust was recorded in the office of the Campbell County Register of Deeds on December 10, 1997.

As pertinent to the issues in this case, the first deed of trust contains the following language:

> ... this conveyance is made IN TRUST *to secure the full, prompt and final payment of any and all indebtedness, principal, interest, attorney's fees and costs,*

*as may be provided in instruments evidencing such indebtedness, or otherwise, now or hereafter owing directly or indirectly, or, as endorser or guarantor for others* to First National Bank, hereinafter called "Beneficiary," its (their) successors and assigns, by the undersigned, or any of them, and specifically for, but not limited to, the following purpose, to wit: Whereas, Raymond L. Cox and wife, Elaine M. Cox, hereinafter called "Obligor(s)," are indebted to the Beneficiary in the sum of TWO HUNDRED THIRTY FIVE THOUSAND FORTY DOLLARS AND NO/100 ($235,040.00) Dollars, evidenced by ONE promissory note(s) described as follows: NOTE DATED 12–5–97 FUNDED 12–8–97 TO BE PAID IN ONE PAYMENT OF ALL OUTSTANDING ˙ PRINCIPAL PLUS ALL ACCRUED INTEREST ON˙ DECEMBER 8, 1998. TO PAY REGULAR QUARTERLY PAYMENTS OF ACCRUED INTEREST BEGINNING MARCH 8, 1998 AND ALL SUBSEQUENT INTEREST PAYMENTS ARE DUE ON THE SAME DAY OF EACH QUARTER AFTER THAT. THIS INSTRUMENT INCLUDES ANY RENEWALS, PARTS OF RENEWALS, OR EXTENSIONS.

\* \* \*

The maximum principal indebtedness for Tennessee Recording Tax Purposes is $235,040.00.

Now, if Obligor(s) shall pay the sum(s) aforesaid when due, according to the terms of said note(s) and/or any and all renewals, modifications and extensions thereof, *and any other debt or debts herein secured,* then this instrument is to be of no further force or effect.

\* \* \*

In case of sale and/or any default under this deed of trust, the proceeds collected shall be applied by the Trustee as follows:

\* \* \*

Second–To pay said debt or debts, or any balance or balances thereof then remaining unpaid, including all charges thereon.

(Capitalization in original; emphasis added). The holder/first deed of trust was not obligated to extend any additional credit to the Coxes, nor were the Coxes obligated to borrow any additional funds from the bank.

The parties stipulated the following with respect to the first deed of trust:

[it] is not an open-ended Deed of Trust or other instrument providing for future advances as set forth under [T.C.A. §] 47–28–101 at 7. Now, that's the statute and group of statutes that deal with open-ended mortgages and Deeds of Trust which are on residential property. It does not relate to commercial property. There may be some similarities, but those statutes are not applicable in this situation. We've agreed to stipulate that.

\* \* \*

This case is not about any rights that the defendants would claim under [T.C.A. §] 47–28–101, which is the group of statutes which deal with open-ended Deeds of Trust, future advance clauses, that sort of thing.

\* \* \*

... [T.C.A. §] 47–28–101 relates to open-ended transactions and has no application to the issues in this case.

On March 5, 1999, the Coxes executed another deed of trust ("second deed of trust") to Joseph G. Coker, trustee, securing a promissory note to Home Federal Bank, FSB, of Middlesboro, Kentucky

("holder/second deed of trust") in the amount of $100,000. The second deed of trust conveyed in trust the same tract of land described in the first deed of trust as well as other realty. The second deed of trust was recorded on March 5, 1999.

The holder/first deed of trust loaned the Coxes an additional $50,000 on or about July 8, 1999. The holder/first deed of trust took a new deed of trust on different property. It was recorded on July 8, 1999. The parties agree that the new deed of trust is an open-end mortgage as defined in T.C.A. § 47–28–101(a)(8) (2001).

When the Coxes defaulted with respect to their obligations to the holder/first deed of trust, the trustee published a trustee's notice of sale and thereafter foreclosed on the 12.58 acres described in the first and second deeds of trust. The holder/first deed of trust applied the proceeds from the foreclosure sale first to the payment of the Coxes' obligations with respect to the initial loan of $235,040. After this was done, there remained proceeds of $31,931.85, which the holder/first deed of trust applied to the Coxes' obligation to it under the promissory note of $50,000 executed in July, 1999.

## II.

The holder/second deed of trust sued the holder/first deed of trust. It sought to recover the "excess" proceeds from the foreclosure sale, an amount which the parties stipulated was the aforesaid $31,931.85.

Following a hearing on the parties' stipulations, the trial court held that the obligation secured by the second deed of trust had priority over the $50,000 loan made by the holder/first deed of trust to the Coxes *after* the second deed of trust was recorded. It rendered judgment for the holder/second deed of trust in the amount of the remaining proceeds. It denied the

request of the holder/second deed of trust for prejudgment interest.

## III.

In addition to stipulating the facts, the parties agreed as to the controlling principles of law. With one notable exception, which we will discuss later in this opinion, the principles stipulated to by the parties were and are correctly stated by them.

■ The parties agree that the first deed of trust contains what is called a "dragnet clause." In general terms, a "dragnet clause" in a deed of trust

> is one which, on its face, purports to include within the coverage of the deed of trust all present and future indebtedness owed by the borrower to the lender in addition to the specific debt being secured by the deed of trust.

*In re Lemka,* 201 B.R. 765, 767 n. 2 (Bankr.E.D.Tenn.1996). Such clauses have been further discussed as follows:

> The term "dragnet clause" connotes breadth of reach and is thought something much more than a conventional future advance clause. Future advances are one sort of debt included within dragnet clauses. All such clauses are enforced by reference to their language and law and not their label.

*Shutze v. Credithrift of America, Inc.,* 607 So.2d 55, 58 n. 1 (Miss.1992).

■ The parties in the instant case further agree—and the law is well-established—that dragnet clauses are valid in Tennessee. *See, e.g., Willie v. First American National Bank (In re Willie),* 157 B.R. 623, 625–26 (Bankr.M.D.Tenn. 1993); *Rogers v. First Tennessee Bank, N.A.,* 738 S.W.2d 635, 636–37 (Tenn.Ct. App.1987); *Duncan v. Claiborne County Bank,* 705 S.W.2d 663, 664–65 (Tenn.Ct.

App.1985). This principle was statutorily confirmed in 1983:

> (b) Any contract, security agreement, note, deed of trust, or other security instrument, in writing and signed or endorsed by the party to be bound, that provides that the security interest granted therein also secures other provisions or future indebtedness, regardless of the class of other indebtedness, be it unsecured, commercial, credit card, or consumer indebtedness, shall be deemed to evidence the true intentions of the parties, and shall be enforced as written; provided, that nothing herein shall limit the right of any party to contest the agreement on the basis that it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

T.C.A. § 47–50–112(b) (2001).

Dragnet clauses are enforceable in Tennessee if the pertinent language is plain and unambiguous. *Johnson v. Midland Bank and Trust Co.,* 715 S.W.2d 607, 611 (Tenn.Ct.App.1986). If the language is plan and unambiguous, it must be enforced according to its terms. *Id.* at 611–12. Those terms "must be construed according to sense and meaning of terms used by the parties, and if such terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense." *Id.* at 611.

In the instant case, the holder/second deed of trust concedes, in so many words, that the language of the first deed of trust is clear and unambiguous and that, as written, the dragnet clause encompasses the $50,000 loan to the Coxes in July, 1999. The holder/second deed of trust further acknowledges that as between the holder/first deed of trust and the Coxes, the former could enforce the dragnet clause.

While conceding that the first deed of trust was recorded first and thus has a general priority over the subsequently-recorded second deed of trust, *see* T.C.A. §§ 66–26–101, 66–26–102, 66–26–105, the holder/second deed of trust argues that this priority does not extend to a loan, *i.e.,* the $50,000 loan, made subsequent to the recording of the second deed of trust. Thus, the question in this case is not which of the liens comes first; it is conceded that the first deed of trust was recorded first. The real issue is the reach of the lien of the first deed of trust and whether it extends to the $50,000 loan.

## IV.

As we have previously noted, the parties stipulated all of the law that they believed to be pertinent to the stipulated facts in this case. Their stipulations as to the law included one pertaining to open-end mortgages and the statutory scheme found at T.C.A. § 47–28–101, *et seq.* (2001). We agree with so much of the parties' stipulation as states that the first deed of trust is not an open-end mortgage. This is because an "open-end mortgage" is defined by statute as a "mortgage securing an open-end credit agreement," T.C.A. § 47–28–101(a)(8), and an "open-end credit agreement" is defined as a "revolving credit agreement that is secured by a mortgage and that *is not entered into for commercial purposes.*" [1] T.C.A. § 47–28–101(a)(7) (emphasis added). The parties agree that the first deed of trust secures a "commercial" loan. Thus, it is clear that

---

1. "A credit agreement or mortgage is for 'commercial purposes,' which is entered into: (1) By an individual, partnership, trust, corporation, or other legal entity that is engaged in business or agricultural endeavors; and (2) Solely in order to finance such endeavors." T.C.A. § 47–28–101(b)(1)–(2).

the first deed of trust is not an open-end mortgage.[2]

The parties' stipulation, however, goes too far. In addition to stating that the first deed of trust is not an open-end mortgage, it purports to bind the parties—as well as the trial court and this court—to the legal proposition that the *totality* of the statutory scheme found at T.C.A. § 47–28–101—110 is not applicable to the facts of this case.[3] For reasons that will become clear, we find and hold, contrary to the stipulation, that certain aspects of the aforesaid statutory scheme are applicable to the stipulated facts before us.

It is important to note that, in addition to defining open-end mortgages, T.C.A. § 47–28–101 contains other definitions, including that of the word "mortgage." *Id.* at (a)(4). A "mortgage" is defined as including "a mortgage, *deed of trust,* or other conveyance of real property securing obligations ..." *Id.* The first deed of trust is obviously, by definition, a mortgage. This will become important as we further pursue the meaning and application of the statutory scheme under discussion.

T.C.A. § 47–28–102 provides, in pertinent part, as follows:

> A *mortgage* may provide that *it secures* not only existing indebtednesses or advances made contemporaneously with the execution thereof, but also *future advances,* whether obligatory, or op-

tional, or both, and *whether made under open-end credit agreements or otherwise,* to the same extent as if such future advances were made contemporaneously with the execution of the mortgage, ...

(Emphasis added). It is followed by T.C.A. § 47–28–103 that addresses the subject of "advances" and the "priority" of same. While the word "advances" is not defined in the statutory scheme, we find that it has a well-defined meaning when viewed in the context of the matters under discussion:

> —n. ... 4. *Plural* ... 5. a. The furnishing of funds or goods on credit.

The American Heritage Dictionary of the English Language 18 (William Morris ed., 1978). To the same effect is Webster's II New Riverside University Dictionary 80 (Anne H. Soukhanov ed., 1994). Thus, we conclude that the $50,000 loan to the Coxes on or about July 8, 1999, falls within the concept of "advances." In usual parlance, a loan to a bank customer is sometimes referred to as an advance to the customer.

In the instant case, the parties agree that the holder/first deed of trust was not obligated under the original loan agreement to "advance" funds in addition to the $235,040 advanced on December 8, 1997. Thus, it is clear that the loan of $50,000 was not an "obligatory advance"[4] as those words are used in the following statute:

---

2. There may be other reasons why the first deed of trust is not an open-end mortgage. *See, e.g.,* T.C.A. § 47–28–101(10)(A)–(C). Having found that the first deed of trust fails to qualify as an open-end mortgage because it secures a "commercial" loan, we do not find it necessary to delve into the meaning of a "revolving credit agreement." *Id.*

3. While not controlling as a matter of law, the title given by the Code Commission to Chapter 28 of Title 47—"Open-end Mortgages and Mortgages Securing Future Advances"—

clearly suggests that Chapter 28 deals with more than open-end mortgages.

4. As pertinent to the facts of this case, T.C.A. § 47–28–101(6) defines an "obligatory advance" as

> an advance which the creditor is required to make by agreement with the borrower, whether or not a subsequent event beyond the control of the creditor may allow the creditor to cancel the obligation to make such advance.

(a) The following advances relate back to the time of the recording of the mortgage, and are prior and superior to subsequent encumbrances and conveyances:

(1) All advances, whether obligatory or optional, made under an open-end mortgage in accordance with this chapter;

(2) All obligatory advances made under any mortgage securing a revolving credit agreement that is not an open-end credit agreement and under any obligatory or optional extension, renewal or amendment of such revolving credit agreement; provided, that no optional extension, renewal or amendment shall increase the advances entitled to priority under this subdivision above the maximum amount entitled to priority under the original revolving credit agreement; and

(3) All obligatory advances made under any other mortgage securing future advances.

(b) All obligatory advances made pursuant to an optional increase in the credit limit of a revolving credit agreement that is not an open-end credit agreement and pursuant to any obligatory or optional extension, renewal or amendment of such increase shall relate back to the time of the recording of the mortgage securing such revolving credit agreement and are prior and superior to subsequent encumbrances and conveyances unless the mortgagee has actual notice of an intervening conveyance or encumbrance prior to increasing the credit limit. If the mortgagee has actual notice of an intervening conveyance or encumbrance prior to increasing the credit limit, all such obligatory advances shall relate back to the time of the increase. For the purpose of this subsection, "actual notice" means knowledge in fact from any source by any means.

(c) Optional advances made under any mortgage securing future advances, other than an open-end mortgage, are superior in priority to any intervening conveyance or encumbrance unless the mortgagee has actual notice of the intervening conveyance or encumbrance prior to exercising the mortgagee's option to make the advance. For the purpose of this subsection, "actual notice" means knowledge in fact from any source by any means.

T.C.A. § 47–28–103. Since this case does not involve an "open-end mortgage" and since the $50,000 loan on or about July 8, 1999, is not an "obligatory advance," it is clear that T.C.A. § 47–28–103(a)(1),(2) and (3) as well as subsection (b) of that statute, by definition, do not apply to the facts of the instant case. This leaves T.C.A. § 47–28–103(c), which we again quote for the purpose of emphasis:

> Optional advances made under any *mortgage* securing future advances, *other than an open-end mortgage,* are superior in priority to any intervening conveyance or encumbrance unless the mortgagee has actual *notice* of the intervening conveyance or encumbrance prior to exercising the mortgagee's option to make the advance. For the purpose of this subsection, "actual notice" means knowledge in fact from any source by any means.

*Id.* (Emphasis added).

"Optional advances" are defined as "*any* advance which is not obligatory." T.C.A. § 47–28–101(9). It follows that the $50,000 loan made by the holder/first deed of trust on or about July 8, 1999, is an optional advance. From what we have said, it is clear that the $50,000 loan to the Coxes is an "[o]ptional advance[ ] made under [a] mortgage securing future advances." T.C.A. § 47–28–103(c). It is

superior in priority to any intervening conveyance or encumbrance unless the mortgagee has actual notice of the intervening conveyance or encumbrance prior to exercising the mortgagee's option to make the advance. For the purpose of this subsection, "actual notice" means knowledge in fact from any source by any means.

*Id.*

We conclude that the $50,000 loan *may be* "superior in priority," *id.*, to the second deed of trust by virtue of the dragnet clause, *i.e.*, the clause in the first deed of trust securing future advances. We say "may be" because the record before us is silent[5] as to whether the holder/first deed of trust had "actual notice" of the second deed of trust, which "notice," as defined in the statute, "means knowledge in fact from any source by any means." *Id.* "Actual notice" is clearly different from "constructive notice." *See Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695, 698 (1956). Because of the state of the record, we find it necessary to vacate the trial court's judgment and remand this matter to the trial court to determine whether the holder/first deed of trust had "actual notice" of the second deed of trust when it loaned the Coxes an additional $50,000 on or about July 8, 1999. *See* T.C.A. § 27–3–128 (2000). If it did not, the advance of $50,000 "relate[s] back to the time of the recording of the [first deed of trust]" and is "prior and superior to [the second deed of trust]." T.C.A.

§ 47–28–103(a). The use of the word "unless" in T.C.A. § 47–28–103(c) persuades us that the converse is also true, *i.e.*, if the holder/first deed of trust had "actual notice" of the second deed of trust when it made the $50,000 advance to the Coxes, it does not have priority and the holder/second deed of trust is entitled to the excess proceeds.

We acknowledge that we have ignored the parties' stipulation that the totality of the statutory scheme under discussion is not applicable to the facts of the instant case. We are not bound by stipulations pertaining to questions of law. *Murvin v. Cofer*, 968 S.W.2d 304, 309 (Tenn.Ct.App.1997). Certainly, we are not required to honor one when, as here, it is an erroneous interpretation of the law.

## V.

The holder/second deed of trust contends that it was misled by the notice of trustee's sale under the first deed of trust. While acknowledging that it had actual knowledge[6] of the place, date and time of the foreclosure sale under the first deed of trust in advance of that sale, the holder/second deed of trust points out that the notice did not state that the sale was being held in an attempt to collect the Coxes' $50,000 obligation. It contends that the failure to include a reference to the $50,000 loan led it to believe that the holders of the two deeds of trust were of the same mind, *i.e.*, that the priority of the

---

**5.** In its brief, the holder/second deed of trust asserts that the holder/first deed of trust "never denied it had actual notice of the second deed of trust ... prior to ... making the subsequent new loan ... to [the Coxes]." We are not sure what the appellee means when it says "never denied." Is this the same as saying the appellant agreed that it knew of the existence of the second deed of trust? We do not believe this is what the appellee is saying. Furthermore, it is not clear whether the appellee is referring to the type of "actual no-

tice" contemplated by T.C.A. § 47–28–103(c). In any event, the record does not show "actual notice" and assertions in briefs do not constitute facts that we can consider on appeal. *Davis v. Hall*, 920 S.W.2d 213, 216 (Tenn.Ct.App.1995).

**6.** The parties stipulated that the trustee in the first deed of trust sent the holder/second deed of trust a copy of the notice.

first deed of trust did not extend to the debt incurred after the second deed of trust was recorded. It is clear from the parties' stipulations of fact that the holder/second deed of trust was not represented at the sale and that it did not learn until some time after the sale that the holder/first deed of trust intended to assert its priority as to the $50,000 loan.

The holder/second deed of trust also points out that the notice of trustee's sale does not mention the second deed of trust. It contends that it is among the "parties interested" and that the notice of trustee's sale was further deficient in that it failed to comply with the requirements of T.C.A. § 35–5–104 (2001), specifically subsection (a)(1) requiring that "[t]he advertisement or notice shall . . . [g]ive the names of . . . parties interested." It correctly points out that T.C.A. § 35–5–104(d) defines "parties interested" to include the "record holders of any . . . deed of trust." The holder/second deed of trust contends that the absence of its name from the notice was an additional factor that led it to believe that the sale would not affect what it believed was its priority with respect to the subsequent loan of $50,000.

In the course of its opinion, the trial court alluded to the alleged deficiencies in the notice of sale:

> This property was sold by a notice of trustee's sale without any specific notice or the naming of the second mortgage holder, or without any notice to them of additional debt in excess of the original amount.
>
> The Court does not believe that that [sic] should be or is the law in this state. The clauses are valid in some instances. But I agree with Mr. Coker, that if this was a valid way of filing, that second deeds of trust would have absolutely no

validity. If there's notice that the first Deed of Trust is extending additional loans, or there's an obligation to do so, certainly I think it would be valid. And I think bearing upon the same thing, within, then, the notice of trustee's of [sic] sale, had they been named as a party and given notice of additional debt.

> But the lack of those two items, the Court believes that the plaintiff should prevail upon the priority of the second Deed of Trust over the additional indebtedness clause.

The holder/second deed of trust stated at trial that it was not attempting to invalidate the trustee's sale or the multiple deeds delivered pursuant to it.[7] It simply argues that it was misled by the notice and that it should be entitled to relief as a result.

In addition to information not implicated by the facts of this case, the "advertisement or notice" of T.C.A. § 35–5–104 is required to:

> (a)(1) Give the names of the plaintiff and defendant, or parties interested;
>
> (2) Describe the land in brief terms, including the street address if available;
>
> (3) Mention the time and place of sale;
>
> \* \* \*
>
> (d) For the purposes of this section, "parties interested" includes, without limitation, the record holders of any mortgage, deed of trust, or other lien which will be extinguished or adversely affected by the sale . . .

*Id.*

As to the first point raised by the holder/second deed of trust, there is nothing in the statute requiring that the $50,000 debt be referenced as an obligation, the collection of which is to be effected, or attempt-

---

**7.** The property sold consisted of subdivision lots.

ed to be effected, through the foreclosure sale. This omission does not run afoul of the statute pertaining to notice of the trustee's sale.

The notice of trustee's sale in the instant case provides that the first deed of trust is of record "describ[ing] real estate, to secure the payment of the following indebtedness: one note of even date executed by FIRST NATIONAL BANK,[8] in the original amount of $235,040"; that "default has been made in the payment of said indebtedness and *other provisions of the Trust Deed* have been violated"; that the holder/first deed of trust "has declared the entire amount due and payable as provided in said deed of trust"; and has directed the trustee to "foreclose the deed of trust." (Emphasis added). The notice goes on to say that the property—described by metes and bounds—will be sold at public auction on a specified date and at a specified time and place "in bar of the right and equity of redemption and all other rights and exemptions, and subject to the following conditions: unpaid property taxes and other prior encumbrances of record." The last paragraph of the notice, following the metes and bounds description, includes the provision that

> [t]he proceeds from the sale of the above-described property shall be applied in accordance with the provisions of the above described Deed of Trust.

We find and hold that the notice before us conforms to the requirements of T.C.A. § 35–5–104 in all respects except that it does not state the name of the holder/second deed of trust as required by T.C.A. § 35–5–104(a)(1). However, the holder/second deed of trust acknowledges that it received, in advance of the sale, a copy of the notice from the trustee named in the

first deed of trust. In our judgment, the forwarding of such a notice to the holder/second deed of trust renders the subject deficiency in the notice harmless; in any event there is nothing in this failure to warrant a change in the priority established by T.C.A. § 47–28–103(c).

In the instant case, the holder/second deed of trust was on notice that a prior deed of trust was to be foreclosed on property burdened with the lien of the second deed of trust. It was up to the holder/second deed of trust to determine its rights *vis-a-vis* those of the holder/first deed of trust and to decide what if any action it should take with respect to the sale. It is charged with notice that the law gives the holder/first deed of trust a priority over the subsequent deed of trust as to obligations encompassed by the dragnet clause. We agree with the following observation of the Mississippi Supreme Court.

> Third parties dealing with the debtor ... are given notice by the public record that the recorded lien secures any future advances. Those third parties are charged at their peril to inquire of the debtor and prior secured creditors. The device of a subordination agreement or notice to terminate may be available but, failing some legally effective contract or notice rearranging rank, third parties cannot be heard to complain when the original secured creditor's future advances are accorded the priority its publicly recorded instrument imports.

*Shutze*, 607 So.2d at 63.

## VI.

Since this matter is being remanded for further proceedings, we do not find it ap-

---

**8.** Obviously this is a mistake. The debt was that of the Coxes. The parties, in effect, stipulated that this error was not material and

not fatally defective under the facts of this case.

propriate to address the holder/second deed of trust's issue with respect to pre-judgment interest. That issue is pretermitted.

## VII.

The judgment of the trial court is vacated. Costs on appeal are taxed to Home Federal Bank, FSB, of Middlesboro, Kentucky. We remand this matter to the trial court for further proceedings, consistent with this opinion.