IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 16, 2021 Session

GLENVER IAN SMITH, ET AL V. STEPHEN L. HUGHES, ET AL

Appeal from the Chancery Court for Fayette County
No. 17805    William C. Cole, Chancellor

————————————————————

No. W2020-01228-COA-R3-CV

————————————————————

This case involves an action filed by heirs of a deceased debtor seeking to set aside a foreclosure sale and their claims for damages against multiple defendants involved with the sale. The trial court granted summary judgment to the substitute trustee who conducted the sale, granted motions to dismiss filed by five other defendants, and dismissed the two remaining defendants sua sponte. The plaintiffs appeal. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

John D. Horne, Memphis, Tennessee, for the appellants, Glenver Ian Smith, and April La'Vera Smith.

Richard Glassman and James F. Horner, Jr., Memphis, Tennessee, for the appellee, Stephen L. Hughes, Substitute Trustee.

Andrew B. Sanders and Lauren Paxton Roberts, Memphis, Tennessee, for the appellee, Farm Credit Mid-America, FLCA.

R. Porter Feild and Sarah E. Stuart, Memphis, Tennessee, for the appellees, William Vernon Powers, Deborah Lynn Powers, John W. Byrd, Trustee, and Bartlett Mortgage, Inc.

A. Blake Neill, Somerville, Tennessee, for the appellees, John E. Weston and Terry Hilliard.

## OPINION

## I. FACTS & PROCEDURAL HISTORY

In 1983, Kathleen Jones Smith acquired title to approximately five acres of land pursuant to a deed from her mother, which was recorded in the Office of the Register of Deeds of Fayette County, Tennessee. In 2007, Kathleen Jones Smith executed a deed of trust pledging her interest in a two-acre portion of the property to secure a promissory note for a $116,000 loan from Farm Credit Mid-America, FLCA ("Farm Credit"). The deed of trust was also recorded in the Office of the Register of Deeds of Fayette County. The deed of trust identified the residential address of Kathleen Jones Smith as 13695 Highway 196, Eads, Tennessee, which was a residence located on the two-acre tract.

Kathleen Jones Smith died intestate on December 30, 2014. She was survived by her two children, Glenver and April Smith.[1] No estate was opened for Kathleen Jones Smith after her death. However, Glenver resided at the aforementioned residence at the property after his mother's death and maintained access to her post office box. Neither Glenver nor April had any verbal, written, or electronic communication with Farm Credit regarding the death of their mother or their interest in the property, but Glenver and/or his father continued to make payments on the loan for the next several years.

In 2017, two affidavits of heirship were filed in the Fayette County Register's Office.[2] According to Glenver and April, the affidavits of heirship were prepared by an

---

[1] Because several parties share the same last name, we will refer to the children by their first names. We intend no disrespect.

[2] Regarding affidavits of heirship, Tennessee Code Annotated section 30-2-712 states, in pertinent part:

> (a) Affidavits duly sworn to upon the personal knowledge of the affiant before an officer entitled to administer oaths in the jurisdiction where the affidavit is made, setting forth any fact or facts concerning the relationship of any parties to persons deceased, or containing a statement of any facts pertinent to be ascertained in determining the persons legally entitled to any part of the estate of the decedent at the time of the decedent's death, shall be accepted for registration, upon presentation, by the registers of deeds in the several counties of the state upon the payment to the register of the usual fees for the recording of instruments entitled under the laws to be recorded.
> (b) The register to whom any such affidavit may be presented for registration shall record the same either in special books kept for this purpose or in the books where deeds are recorded, and in indexing the affidavits the register shall note the instruments as "affidavits of heirship," indexing the name of the decedent as vendor and the names of those listed as heirs as vendees.

"Affidavits of heirship serve two purposes: 'they provide a means to preserve evidence concerning a

attorney at the request of their father, but neither was aware of who actually recorded the documents. The affidavits of heirship began by stating that each affiant had known "Katherine J. Smith" for a number of years. Thereafter, the affidavits of heirship stated that "Kathleen J. Smith" had died and that she had only two children, Glenver and April, at the time of her death. The affidavits of heirship stated that they were executed "to help establish and reflect the heirship with respect to any real estate formerly owned by Kathleen J. Smith," including but not limited to the property at 13695 Highway 196 in Eads. The affidavits listed the address of Glenver as 13695 Highway 196, and they listed April's address at another location in Eads. However, when the documents were indexed, the Fayette County Register's Office only indexed the affidavits under the name of "Katherine J. Smith," which was the first way the name of the decedent was written in the affidavits.

In May 2019, Farm Credit filed an "Appointment of Substitute Trustee" in the Register's Office, appointing Stephen L. Hughes as substitute trustee under the deed of trust so that he could proceed with foreclosure, as the payments on the mortgage were 109 days in default. On May 22, Hughes sent a letter via U.S. Mail to Kathleen Jones Smith at her post office box, P.O. Box 97, stating that he had been engaged by Farm Credit to initiate foreclosure proceedings. The May 22 letter was not returned, and Hughes did not receive any response to the letter.

Hughes asked his law partner to perform a title search for the property at 13695 Highway 196 in the name of the Kathleen Jones Smith. After examining the records, the attorney issued a certificate of title certifying that marketable fee simple title to the property was vested in Kathleen Jones Smith. A commitment for title insurance was secured for the property as well.

On June 24, 2019, Hughes sent by certified mail a "Notice of Substitute Trustee's Sale of Real Estate" to Kathleen Jones Smith both at the property address, 13695 Highway 196, and also to the post office box address. Both envelopes were eventually returned with a notation of "unclaimed" and "unable to forward." On three dates in June and July, Hughes caused the Notice to be published in the *Fayette Falcon* newspaper, announcing that the deed of trust executed by Kathleen Jones Smith was in default and that the foreclosure sale would occur on July 17. In the space for other "interested parties," the Notice listed "None."

---

decedent's estate that might otherwise be lost with the passage of time;' and, 'they provide record notice to the world of a claimed interest in a decedent's property.'" *Bridgewater v. Adamczyk*, No. M2009-01582-COA-R3-CV, 2010 WL 1293801, at *4 n.6 (Tenn. Ct. App. Apr. 1, 2010) (quoting *Boone v. Frazor*, No. 87-177-II, 1988 WL 77542, at *3 (Tenn. Ct. App. July 27, 1988)). "'[W]hen one has died intestate owning real estate, the filing of an affidavit of heirship can be helpful in establishing the chain of title to the real estate.'" *Id.* (quoting Jack W. Robinson, Sr. et al., 3 *Pritchard on Wills and Administration of Estates* § 1079, p. 236 (6th ed. 2007)); *see also* Dan Holbrook, *The Curious Meaning of Words*, 38 Tenn. B.J. 26, 26 n.3 (Dec. 2002) (explaining that an affidavit of heirship "may be the easiest method of demonstrating with the Register of Deeds the chain of title that has passed").

Hughes conducted the foreclosure sale on July 17 as scheduled, and the property was sold to John Weston and Terry Hilliard for $45,901. The balance owed on the Farm Credit note was approximately $44,400. A substitute trustee's deed was executed and recorded, conveying the property to Mr. Weston and Mr. Hilliard. On August 30, 2019, Mr. Weston and Mr. Hilliard sold the property for $145,000 to Mr. and Mrs. William Vernon Powers. Mr. and Mrs. Powers executed a deed of trust in favor of their lender, Bartlett Mortgage, Inc., with John W. Byrd serving as trustee.

On October 25, 2019, Glenver and April Smith ("Plaintiffs") filed a complaint to set aside the foreclosure sale, to void the subsequent deeds to the real property, for damages to real and personal property, and for fraud, willful and/or negligent misrepresentation, and conversion. They named as defendants Hughes, Farm Credit, Mr. Weston, Mr. Hilliard, Mr. and Mrs. Powers, Mr. Byrd, and Bartlett Mortgage. Plaintiffs alleged that they had no prior knowledge of the foreclosure sale. Plaintiffs asserted that the aforementioned affidavits of heirship had "confirmed in the public record" the addresses of the heirs of Kathleen Jones Smith. Thus, Plaintiffs alleged that Hughes and Farm Credit "knew or should have known" their addresses and "knew or should have known" that they were "interested parties" with regard to the foreclosure sale. They alleged that Hughes and Farm Credit were obligated to list their names as "interested parties" in the advertisement of the foreclosure sale pursuant to Tennessee Code Annotated section 35-5-104. Instead, Plaintiffs alleged, Hughes and Farm Credit "intentionally, or negligently, made the false representation" in the advertised notice that there were no interested parties. Plaintiffs asserted that the failure to list them as "interested parties" in the advertisement or otherwise provide them with notice rendered the foreclosure sale "void as a matter of law." Plaintiffs alleged that Hughes and Farm Credit had a duty to provide them with "actual notice" that they intended to extinguish Plaintiffs' interest in the property through foreclosure. They claimed that the fair market value of the property was at least $145,000 and that it was sold for only $45,901, a "grossly inequitable price." Plaintiffs asserted that if the wrongful foreclosure was not set aside, they would sustain damages of $101,399.[3]

The complaint did not set forth separate counts against each defendant or separately analyze the elements of any causes of action. After the facts section, the complaint simply

---

[3] Plaintiffs further alleged that the defendants were barred from selling the property by Tennessee Code Annotated section 13-3-410 because it had not been approved for subdivision, nor had a subdivision plat been recorded. In addition, they alleged that a representative of Farm Credit had visited the property after the sale accompanied by a sheriff's deputy and informed Glenver that the property had been sold, that he was a trespasser, and that he would be prosecuted if he did not vacate the property. The complaint alleged that Glenver immediately left the property, fearing prosecution, and that he left all of his household goods and personal property. Thus, Plaintiffs alleged that either Farm Credit, Mr. Weston, or Mr. Hilliard had converted the personal property or taken it into possession as a bailment or constructive trust. However, Plaintiffs do not develop any argument on appeal regarding these claims, so we will not discuss them further in this opinion.

listed "claims for relief," in which Plaintiffs sought an order setting aside the foreclosure sale as void, declaring the subsequent deeds void, and awarding Plaintiffs monetary damages for wrongful foreclosure and other claims. The request for damages was limited to defendants Hughes, Farm Credit, Mr. Weston, and Mr. Hilliard.

All of the defendants filed answers and/or motions to dismiss, and discovery ensued. Farm Credit filed a motion to stay discovery on January 9, 2020, asserting that Plaintiffs had propounded discovery to Farm Credit and that the trial court should stay further discovery until the court resolved its motion to dismiss for failure to state a claim. Farm Credit asserted that requiring it to respond to the discovery would waste time and resources if the complaint was invalid and subject to dismissal. In response, Plaintiffs filed a motion to compel Farm Credit to respond to their interrogatories and requests for production of documents. Plaintiffs argued that the hearing on the motion to dismiss for failure to state a claim should be stayed until Farm Credit responded to discovery.

Hughes filed a motion for summary judgment, asserting that he had complied with all statutory notice and publication requirements and did not breach any duty to Plaintiffs. Hughes argued that even if Plaintiffs would have otherwise been entitled to notice of the sale, he did not have any actual or record notice of their interests in this case. Hughes supported his motion with his own affidavit, which stated that he was unaware that Kathleen Jones Smith was deceased. He described sending the May 22 letter to the post office box for Kathleen Jones Smith, which was not returned, and receiving no response. He stated that he secured a title search from a partner at his firm along with a certificate of title for the property. Hughes stated that the affidavits of heirship referenced in Plaintiffs' complaint were only indexed in the name of "Katherine J. Smith," and not in the name of the debtor, Kathleen Jones Smith. As such, he explained that the affidavits of heirship were outside the chain of title to the subject property and did not show up in the title search performed in conjunction with the foreclosure. Hughes stated that he subsequently sent notice of the sale via certified mail to the attention of Kathleen Jones Smith at the physical property address and also the post office box address. On three separate dates, he also caused the notice to be published in the *Fayette Falcon* newspaper, announcing that the deed of trust executed by Kathleen Jones Smith was in default and that a foreclosure sale would be held on July 17. Hughes stated that Plaintiffs never notified him of their mother's death or their purported interest in the property at any point prior to the sale, nor did he otherwise have actual, record, or constructive notice of the death of the debtor or Plaintiffs' interest in the property. He submitted numerous documents in support, including the May 22 letter, the "Notice of Substitute Trustee's Sale of Real Estate," the affidavits of heirship, and the relevant deeds and deed of trust. Hughes also submitted interrogatory responses of both Plaintiffs, confirming that Glenver resided at the residence at the subject property and maintained the post office box after his mother's death. Hughes also submitted Plaintiffs' interrogatory responses admitting that they had no verbal, written, or electronic communication with Farm Credit or Hughes notifying them of the death of Kathleen Jones Smith or their interest in the property, aside from the affidavits of heirship and the making

of the loan payments.

In sum, Hughes argued that he had negated an essential element of Plaintiffs' wrongful foreclosure claim by showing that he had complied with the statutory notice and publication requirements by mailing notice to the sole debtor, Kathleen Jones Smith. Hughes argued that Plaintiffs were not "interested parties" required to be listed in the advertisement because they were not record holders of any interest in the property, they were outside the chain of title, and he had no actual or constructive notice that they held any interest in the property.

On May 18, 2020, Plaintiffs filed a motion to continue the hearings on the motion for summary judgment and the other defendants' motions to dismiss, which were set for hearing ten days later, on May 28. Plaintiffs cited Tennessee Rule of Civil Procedure 56.07, which provides,

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As factual support for their motion, Plaintiffs argued that Hughes did have constructive notice of their interest in the property because there was some reference to the location of the affidavits of heirship on a document in his title search file from the State of Tennessee Comptroller of the Treasury. The document was entitled "Real Estate Assessment Data," and it listed the property owner of the parcel at issue as "SMITH KATHLEEN J., PO Box 97." However, under "Sale Information," the document stated:

| Sale Date | Price | Book | Page | Vac/Imp | Type Instrument |
|---|---|---|---|---|---|
| 9/17/2017 | | 170 | 07145 | | HR |
| 8/17/2017 | | 170 | 07144 | | HR |

Plaintiffs suggested that this was a reference to the location of the affidavits of heirship. As for the reason they needed a continuance, Plaintiffs asserted that they should be "afforded the opportunity for adequate pretrial discovery." They filed the responses to interrogatories and requests for production of documents that had already been produced by Hughes. However, Plaintiffs nevertheless sought a continuance to allow them to engage in further discovery and to take depositions of Hughes and Farm Credit representatives. Plaintiffs asserted that they could not present facts sufficient to fully justify opposition to the Hughes motion for summary judgment because Farm Credit had filed a motion to stay discovery and Hughes had claimed that certain communications he had with Farm Credit were subject to attorney-client privilege. Plaintiffs contended that the outcome of the other defendants' motions to dismiss would turn on the success or failure of the motion for

summary judgment filed by Hughes. They filed a "Joint Affidavit" in support of their motion for a continuance, stating that everything in their motion was true and correct and based upon their personal knowledge.

In addition to their motion for a continuance, Plaintiffs also filed a response to the motion for summary judgment filed by Hughes, a response to the statement of facts filed by Hughes, and a statement of additional facts. Plaintiffs maintained that the affidavits of heirship provided Hughes and Farm Credit with actual and constructive notice of the death of Kathleen Jones Smith and their interest, regardless of how they were indexed, due to the reference to their location on the tax sheet.

Hughes responded to Plaintiffs' statement of additional facts. Also, as additional support for his motion for summary judgment, Hughes filed defendant Weston's responses to interrogatories. In those responses, Mr. Weston stated that he went with Mr. Hilliard to the subject residence on July 19, days after the foreclosure sale, but no one came to the door, so they contacted the sheriff's department for assistance. Once the sheriff's deputy arrived, he said, Glenver answered the door. Mr. Weston stated that he and Mr. Hilliard informed Glenver that they had purchased the property at a foreclosure sale, and according to Mr. Weston, Glenver responded that he "knew this was coming" because he had seen the foreclosure notice in the mail at his post office box. Mr. Weston said that Glenver agreed to remove his belongings by the following Monday, but they never heard from him again, despite attempts by their attorney to contact him. In response to the motion to continue filed by Plaintiffs, Hughes argued that no additional discovery was necessary because it would not change the fact that Plaintiffs were not entitled to notice under the relevant statutes. Hughes argued that the tax printout did not appear in the chain of title, did not identify where the referenced documents were filed, and did not alter his duties under the relevant statutes. Additionally, he argued that Mr. Weston's discovery response showed that Glenver had actual notice of the foreclosure.

On July 30, 2020, the trial court held a hearing on all of the pending motions, including Plaintiffs' motion to compel Farm Credit to respond to discovery, Plaintiffs' motion to continue the hearing, the motion for summary judgment filed by Hughes, and the motions to dismiss filed by other defendants. After the hearing, the trial court entered a series of orders resolving all of the pending motions. First, the trial court denied Plaintiffs' motion to compel Farm Credit to respond to discovery and to continue the hearings. Next, the trial court granted the motion for summary judgment filed by Hughes. Looking to the statutes governing notice of foreclosure sales, the trial court found that Glenver and April were not entitled to notice by mail because they were not a "debtor" or "co-debtor," and they were not required to be listed in the advertisement of the sale as "parties interested." The trial court found that the affidavits of heirship were only indexed in the name of Katherine J. Smith. It noted that during the foreclosure process, Hughes acquired a tax record for the property that included a reference to the book and page number for the affidavits of heirship, but at the same time, listed Kathleen Jones Smith as the owner

- 7 -

of the property. The trial court found that there were no facts alleged or evidence in the record to support any claim that Hughes violated the deed of trust or committed any irregularity, misconduct, fraud, or unfairness that contributed to an inadequate price. Thus, the trial court found that Hughes was entitled to summary judgment.

Next, the trial court granted the motion to dismiss filed by Farm Credit. Taking all the allegations of the complaint as true, the trial court found that it was subject to dismissal because neither Glenver nor April were debtors or parties interested in the foreclosure such that they would be entitled to notice under the statutes. Even if they were, the trial court found, the foreclosure sale would not have been void or voidable due to a lack of notice. The trial court found no facts alleged to show irregularity, misconduct, fraud, or unfairness, contributing to an inadequate price. As such, the claims against Farm Credit were dismissed.

The trial court entered a separate order granting the motions to dismiss filed by Mr. and Mrs. Powers, Mr. Byrd, and Bartlett Mortgage, for essentially the same reasons set forth in the order of dismissal of Farm Credit. Finally, the trial court entered an order addressing defendants Weston and Hilliard. Even though they had only filed an answer and not a motion to dismiss, the trial court found that the claims against them should also be dismissed based on the findings in its orders granting the motions of the other defendants. Plaintiffs timely filed a notice of appeal.

## II. ISSUES PRESENTED

Plaintiffs present the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court erred in denying Plaintiffs' Rule 56.07 motion to continue the summary judgment hearing to allow Plaintiffs to take deposition testimony;
2. Whether the trial court erred in denying Plaintiffs' motion to compel Farm Credit to respond to discovery;
3. Whether the trial court erred in granting summary judgment to Hughes;
4. Whether the trial court erred in granting the motion to dismiss filed by Farm Credit;
5. Whether the trial court erred in granting the motions to dismiss filed by Mr. and Mrs. Powers, Bartlett Mortgage, and Mr. Byrd; and
6. Whether the trial court erred in dismissing the claims against Mr. Weston and Mr. Hilliard.

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.[4]

---

[4] We note that defendant Farm Credit requested an award of attorney fees incurred in the trial court

## III. Discussion

### A. Summary Judgment in favor of Hughes

Because of the particular notice requirements at issue, it is helpful to examine the merits of the motions filed by the various parties before considering Plaintiffs' motion to compel and motion to continue. We start with the motion for summary judgment filed by Hughes. "We review a lower court's decision on a summary judgment motion *de novo* with no presumption of correctness." *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 12 (Tenn. 2021) (citing *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015)).

In Tennessee, "'[t]he legislature has determined that the public policy of the state is to allow foreclosure through non-judicial sale.'" *Threadgill v. Wells Fargo Bank, N.A.*, No. E2016-02339-COA-R3-CV, 2017 WL 3268957, at *2 (Tenn. Ct. App. Aug. 1, 2017) (quoting *CitiMortgage, Inc. v. Drake*, 410 S.W.3d 797, 808 (Tenn. Ct. App. 2013)). Nonjudicial foreclosure is the almost exclusive means of foreclosure in this State, and the statutes governing it are outlined in Tennessee Code Annotated sections 35-5-101, *et seq. Id.* "[S]o long as a mortgagee lender complies with the applicable statutes and the terms of the deed of trust, it does not have to resort to a judicial forum to foreclose on a secured property." *Id.* (internal citation omitted).

We begin with the language of the relevant statutes. Tennessee Code Annotated section 35-5-101 provides, in pertinent part:

> (a) In any sale of land to foreclose a deed of trust, mortgage or other lien securing the payment of money or other thing of value or under judicial orders or process, advertisement of the sale shall be made at least three (3) different times in some newspaper published in the county where the sale is to be made.
> . . . .
> (e) In any sale of land to foreclose a deed of trust, mortgage, or other lien securing the payment of money or other thing of value or under judicial orders of process, the trustee or other party that sells the property shall send

---

and on appeal. However, its brief did not list any issue related to such a request. Thus, the issue is waived. "[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012); *see, e.g.*, *Brunetz v. Brunetz*, 573 S.W.3d 173, 185-86 (Tenn. Ct. App. 2018) (concluding that requests for attorney fees were waived where they were argued in the briefs but not properly designated as an issue); *Rigsby v. Rigsby*, No. E2014-02095-COA-R3-CV, 2015 WL 7575075, at *7 (Tenn. Ct. App. Nov. 25, 2015) ("Because Mother did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived.").

to the debtor and any co-debtor a copy of the notice required in § 35-5-104.
. . .

Still, Tennessee Code Annotated section 35-5-106 provides that if the officer or other person making the sale proceeds to sell without pursuing the provisions of this chapter, "the sale shall not, on that account, be either void or voidable."  Simply put, "[t]he failure of a trustee to comply with statutory requirements does not render the sale at foreclosure void or even voidable."  *Aurora Loan Servs., LLC v. Woody*, No. W2014-00761-COA-R3-CV, 2014 WL 7463032, at *13 (Tenn. Ct. App. Dec. 30, 2014) (quoting *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008)).  In Tennessee, "a foreclosure sale cannot be deemed void or voidable even when the sale fails to comply with the terms provided in the foreclosure statutes."  *Wells Fargo Bank, N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, 2014 WL 1673745, at *2 (Tenn. Ct. App. Apr. 24, 2014).  However, the officer or other person who fails to comply with the chapter is "liable to the party injured by the noncompliance, for all damages resulting from the failure."  Tenn. Code Ann. § 35-5-107.  Thus, a violation of the statutory notice provisions may give rise to a viable claim for damages.  *See Amodio v. Ocwen Loan Servicing, LLC*, No. 3:18-CV-00811, 2018 WL 6727106, at *3 (M.D. Tenn. Dec. 21, 2018).  Essentially, "[t]he penalty is not visited on the foreclosed property's title; it is imposed directly on the trustee or other person who failed to comply with the statutes."  John A. Walker, Jr., *Simple Real Estate Foreclosures Made Complex: The Byzantine Tennessee Process*, 62 Tenn. L. Rev. 231, 249 (1995)*.*

### 1.  **Notice Mailed to the Debtor or Co-Debtor**

By its terms, Tennessee Code Annotated section 35-5-101(e) requires the trustee or other party selling the property to send notice "to the debtor and any co-debtor."  Subsection (e) was added to the statute in 2006 as part of the Tennessee Home Loan Protection Act.  *See* 2006 Tenn. Pub. Acts, c. 801, §10; Tenn. Op. Att'y Gen. No. 07-135 (Sept. 12, 2007).  The notice "shall be sent . . . by registered or certified mail, return receipt requested."  Tenn. Code Ann. § 35-5-101(e).  Notably, however, the statute only provides that the trustee shall "send" the notice, and "[t]here is no statutory requirement that the notice be received by the debtor."  *Davis v. Wells Fargo Home Mortg.*, No. W2016-02278-COA-R3-CV, 2018 WL 1560077, at *11 (Tenn. Ct. App. Mar. 29, 2018); *see, e.g.*, *Citizens Nat'l Bank v. Mountain Ridge, LLC*, No. 3:09-CV-263, 2010 WL 4238479, at *5-6 (E.D. Tenn. Oct. 21, 2010) (noting that the certified mailings were returned by the post office marked  "unclaimed" but recognizing that "[t]he statute contains no requirement of actual notice").

In the present case, it is undisputed that Hughes caused a Notice of Substitute Trustee's Sale to be mailed via certified mail to Kathleen Jones Smith at both her post

office box and the physical address of the property.[5]  Both were returned "unclaimed." Plaintiffs argue that Hughes was required to send notice *to them* pursuant to this statute because they were "co-debtors."  We disagree.  Although the statute does not define a "debtor," *Black's Law Dictionary* defines the term to mean "[s]omeone who owes an obligation to another, esp. an obligation to pay money; esp., the person who owes payment or other performance of a secured obligation, whether or not that person owns or has rights in the collateral . . . ." *Black's Law Dictionary* (11th ed. 2019).  This definition is consistent with the reference in subsection (e)(1)(B) to "the loan agreement from the debtor to the creditor."  Tenn. Code Ann. § 35-5-101(e)(1)(B).  Neither Glenver nor April was a debtor pursuant to the Farm Credit note.  According to Plaintiffs' complaint, Kathleen Jones Smith had executed the deed of trust "to secure a Promissory Note *she executed* in favor of Farm Credit." (emphasis added).  In addition, it is undisputed that Glenver and April had no communication with Farm Credit after the death of their mother.  Thus, there is nothing in the record to suggest that they were obligated to pay the note.

A federal district court reached a similar conclusion, when applying this statute, in *Coleman v. Indymac Venture, LLC*, 966 F.Supp.2d 759 (W.D. Tenn. 2013).  The plaintiff, Mr. Coleman, filed an action to rescind a foreclosure sale, claiming that he was entitled to notice of the sale pursuant to Tennessee Code Annotated section 35-5-101(e).  *Id.* at 771-72.  His wife had signed the promissory note promising to pay back the loan.  *Id.* at 771.  The deed of trust was signed by Mr. Coleman and his wife, but it listed the sole borrower as his wife.  *Id.* at 765.  The deed of trust listed Mr. Coleman as a co-signer but "only to mortgage, grant and convey [his] interest in the property," and it specifically provided that he was "not personally obligated to pay" the sums secured by the security instrument.  *Id.* at 770.  As such, the district court concluded that Mr. Coleman was not a debtor or co-debtor within the meaning of Tennessee Code Annotated section 35-5-101(e), and the bank was "not required, under Tennessee law, to send him a notice of the foreclosure sale."  *Id.* at 772.

We likewise conclude that Hughes was not required to send notice of the sale to Glenver or April because they were not debtors or co-debtors within the meaning of Tennessee Code Annotated section 35-5-101(e).  Even though Glenver, April, or someone

---

[5] Notice to the debtor must be "addressed to the debtor" and sent to:

(A) The mailing address of the property, if any; and

(B) The last known mailing address of the debtor or any other mailing address of the debtor specifically designated for purposes of receiving notices provided at least thirty (30) days prior to the first publication date in written correspondence or written notice in accordance with the loan agreement from the debtor to the creditor, but only if the last known mailing address of the debtor or other mailing address designated by the debtor is different from the mailing address of the property[.]

Tenn. Code Ann. § 35-5-101(e)(1).

on their behalf may have been making payments on the note, they were not debtors obligated to do so.

## 2. Advertisement of the Sale

We now turn to the published notice requirement of Tennessee Code Annotated section 35-5-101(a). This section requires advertisement of the sale at least three times in some newspaper published in the county where the sale is to be made. Tenn. Code Ann. § 35-5-101(a). Tennessee Code Annotated section 35-5-104 governs the content of the required advertisement. Among other things, it provides that the advertisement shall "[g]ive the names of the plaintiff and defendant, or parties interested[.]" Tenn. Code Ann. § 35-5-104(a)(1). It states:

> For the purposes of this section, "parties interested" includes, without limitation, the record holders of any mortgage, deed of trust, or other lien that will be extinguished or adversely affected by the sale and which mortgage, deed of trust, or lien, or notice or evidence thereof, was recorded more than ten (10) days prior to the first advertisement or notice in the register's office of the county in which the real property is located. "Parties interested" also includes a person or entity named as nominee or agent of the owner of the obligation that is secured by the deed of trust and that is identifiable from information provided in the deed of trust, which shall include a mailing address or post office box of the nominee or agent.

Tenn. Code Ann. § 35-5-104(d). The second sentence in subsection (d) was added by amendment in 2015. *See* 2015 Tenn. Pub. Acts, c. 213; *see also Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 291 (Tenn. 2015) (discussing the role of Mortgage Electronic Registration Systems, Inc. as the nominee or agent of lenders).

Glenver and April argue that the advertisement of the sale should have listed them as "parties interested." Hughes takes the position that the term "parties interested" is statutorily defined and limited to the parties described in the two sentences comprising subsection (d). Hughes notes that Glenver and April were not record holders of any mortgage, deed of trust, or lien. However, Plaintiffs argue that the use of the introductory phrase "includes, without limitation," indicates that these are only some examples of "parties interested."

The statutory requirement of listing the "parties interested" in the notice has existed for well over a century. *See, e.g., Arnold v. Dinsmore*, 43 Tenn. 235, 239 (1866) ("All that is required by the Statute, Code, sec, 2149, to appear in the notice, is, the names of the plaintiff and defendant, or parties interested--a description of the land, and the time and place of the sale.") However, we find little guidance in the caselaw regarding how the term

should be interpreted.[6]  As such, we begin with guidance from the Tennessee Supreme Court for interpreting statutes that use the term "includes."

> The phrases, "includes, but is not limited to" and "including but not limited to," are generally deemed to be terms of enlargement, not of restriction.  *See Owings v. Owings*, No. W2005-01233-COA-R3-CV, 2006 WL 3410702, at *8 (Tenn. Ct. App. Nov. 27, 2006) (interpreting the Child Support Guidelines' use of the phrase "including but not limited to" as supporting a broad definition of gross income, not limited to the enumerated categories); *Raybon v. McElrath*, No. M2001-01295-COA-R3-JV, 2003 WL 22401276, at *2 (Tenn. Ct. App. Oct. 22, 2003) (same); *see also Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 650 n.5 (Tenn. Ct. App. 2001) (interpreting the Tennessee Human Rights Act's use of the phrase "including but not limited to" as providing an "extensive" list of remedies).  Indeed, *even when "including" is used alone in conjunction with a list of items*, it serves as a term of enlargement, not one of restriction.  "When a statutory definition states that it 'includes' specific items, we have held that the 'enumerated items are illustrative, not exclusive.'"  *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010) (quoting *Gragg v. Gragg*, 12 S.W.3d 412, 415 (Tenn. 2000)).

*Lovlace v. Copley*, 418 S.W.3d 1, 18 (Tenn. 2013) (emphasis added).

Applying this reasoning, the statute's use of the terms "includes, without limitation," and "also includes" would mean that the enumerated items are illustrative and not exclusive.  *See id.*; *see also Sears, Roebuck & Co. v. Roberts*, No. M2014-02567-COA-R3-CV, 2016 WL 2866141, at *6 (Tenn. Ct. App. May 11, 2016) ("use of the term 'include' does 'not ordinarily introduce an exhaustive list'") (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 53, 132 (2012)).   However, we must also bear in mind the practical impact of our interpretation.  The statute at issue requires the advertised notice of sale to give "the names of the plaintiff and defendant, or parties interested."  Tenn. Code Ann. § 35-5-104(a)(1).  The trustee can be liable for damages for failing to comply with the statute.  *See* Tenn. Code Ann. § 35-5-107.  Thus, Hughes insists that the statute simply cannot be read as "all-encompassing" of any party who subjectively claims to be interested in the sale after-the-fact.  He cites some cases interpreting "parties interested" more narrowly.

For example, in *Burkhart v. Wells Fargo Bank W., N.A.*, No. E2006-01402-COA-R3-CV, 2007 WL 1836850, at *1 (Tenn. Ct. App. June 27, 2007), a property owner had executed two deeds of trust evidencing debts owed to two entities.  The plaintiff purchased

---

[6] The parties rely on this Court's discussion of the issue in *EverBank v. Henson*, No. W2013-02489-COA-R3-CV, 2015 WL 129081 (Tenn. Ct. App. Jan. 9, 2015), but that case is designated "Not for Citation."

the property at a foreclosure sale as to the second deed of trust. *Id.* The published notice of the sale did not specifically mention the first deed of trust. *Id.* Plaintiff filed suit against the trustee and bank, claiming that Tennessee Code Annotated section 35-5-104 imposed a duty on the defendants to disclose the existence of the first deed of trust when they conducted the foreclosure of the second deed of trust. *Id.* at *4. This Court disagreed, explaining:

> Under Tenn. Code Ann. § 35-5-104, a seller has a duty to disclose within the notice of sale the names of interested parties. As pertinent to the case now before us, 'interested parties' is defined in Tenn. Code Ann. § 35-5-104(d) to include "the record holders of any mortgage, deed of trust, or other lien which will be extinguished or adversely affected by the sale …." Tenn. Code Ann. § 35-5-104(d) (2001).
> Because the First Trust Deed held priority over the Second Trust Deed, the First Trust Deed would not be extinguished or adversely affected by the foreclosure sale on the Second Trust Deed. Given this, defendants had no duty under Tenn. Code Ann. § 35-5-104 to disclose the existence of the First Trust Deed during the foreclosure of the Second Trust Deed.

*Id.* at *5. Treating subsection (d) more like a definition, the Court essentially concluded that the record holder of the first deed of trust was not an interested party required to be listed in the notice because that entity did not meet the second part of the definition – its interest would not be extinguished or adversely affected by the sale.[7]

In *Ivey v. Wells Fargo Home Mortg.*, No. 15-2259-STA-CGC, 2015 WL 12826638, at *1 (W.D. Tenn. Sept. 28, 2015), the plaintiff, Mr. Ivey, lived at the mortgaged property for nearly twenty years with his long-time companion, Ms. Carol Compare. However, the lender had made the loan, in 2013, solely to Ms. Compare. *Id.* In 2014, Ms. Compare

---

[7] This Court also construed the statute in *Home Fed. Bank, FSB, of Middlesboro, Kentucky v. First Nat. Bank of LaFollette, Tennessee*, 110 S.W.3d 433, 434 (Tenn. Ct. App. 2002), which also involved a first and second deed of trust. However, in that case, the published notice of sale under the *first* deed of trust failed to mention the lien of the *second* deed of trust, which was adversely affected by the sale. *Id.* at 440-41. The holder of the second deed of trust contended that it was among the "parties interested" that must be listed in the notice of sale pursuant to section 35-5-104. *Id.* at 441. We agreed, stating that the holder of the second deed of trust was correct in its assertion that "T.C.A. § 35-5-104(d) defines 'parties interested' to include the 'record holders of any . . . deed of trust.'" *Id.* The published notice failed to comply with section 35-5-104(a)(1) because it did not state the name of the holder of the second deed of trust. *Id.* at 442.

In an earlier case, we had found it unnecessary to reach the issue of whether a second mortgage holder must be included as an "interested party" in the advertisement of the foreclosure sale because the plaintiff in that case only sought to set aside the foreclosure sale, and "T.C.A. § 35-5-106 clearly and unequivocally provides that the failure to pursue the provisions of 'this chapter' shall not render the sale void or voidable." *McSwain v. Am. Gen. Fin., Inc.*, No. 02A01-9309-CH-00215, 1994 WL 398819, at *1-2 (Tenn. Ct. App. July 22, 1994).

passed away. *Id.* Mr. Ivey communicated with the lender but the lender refused to accept mortgage payments from him on Ms. Compare's behalf. *Id.* Mr. Ivey filed an affidavit of heirship as to Ms. Compare's heirs and obtained a quitclaim deed from her only child and legal heir, which he recorded in the county register's office. *Id.* Still, the lender foreclosed on the property. *Id.* Mr. Ivey brought suit, alleging all of these facts and asserting that he was entitled to notice of the foreclosure under Tennessee law. *Id.* The district court rejected this argument as follows:

> **V. Lack [of] Statutory Notice of the Sale**
> The Amended Complaint next alleges that Defendant failed to give Plaintiff adequate notice of the foreclosure as required under Tennessee law. Tenn. Code Ann. § 35-5-104 requires that the advertisement and notice of the foreclosure sale identify "parties interested" in the land, which includes the record holders of any mortgage, deed of trust, or other lien that will be extinguished or adversely affected by the sale. It is well-settled under Tennessee law, however, that "the mere failure to identify or provide notice to an interested party does not provide sufficient grounds to set aside a foreclosure sale." The Amended Complaint contains *no allegations to show that Plaintiff was entitled to notice of the foreclosure pursuant to Tenn. Code Ann. § 35-5-104* or that Defendant failed to give notice, which was required under the statute. Furthermore, Plaintiff has not shown why any purported failure to comply with the statute would entitle him to the relief he seeks in the Amended Complaint. Therefore, Defendant's Motion [for Judgment on the Pleadings] is GRANTED as to this claim.

*Id.* at *3. Thus, the district court deemed the fact that the plaintiff had resided at the subject property for almost twenty years and obtained a quitclaim deed from the debtor's sole heir to be insufficient to show that he was a "party interested" within the meaning of section 35-5-104. These cases illustrate that section 35-5-104 has not been so broadly interpreted to mean that any party who claims a subjective interest in a foreclosure sale must be listed in the notice of sale as an interested party.

Ultimately, we believe the statute's use of the phrase "includes, without limitation," does compel us to conclude that the following items are not exclusive definitions of parties interested. To accept the interpretation proposed by Hughes, we would have to ignore the phrases "includes, without limitation," and "also includes." The use of the term "includes" in the statute "indicates that the provided list is non-exhaustive" and may include other parties not specifically mentioned in the statute. *Cf. Pavement Restorations Inc. v. Ralls*, No. W2016-01179-COA-R3-CV, 2017 WL 657775, at *7 (Tenn. Ct. App. Feb. 17, 2017). Still, for purposes of this case, it is not necessary to specify exactly what other types of interests may potentially qualify one as an interested party. In the case before us, Hughes simply had no knowledge of any interested party to be listed in the foreclosure notice aside from Kathleen Jones Smith. He submitted an affidavit stating that he was not aware of the

death of Kathleen Jones Smith. He sent the letter on May 22 that was not returned. He secured a title search in the name of the sole debtor and obtained a certificate of title certifying that marketable fee simple title to the property was vested in Kathleen Jones Smith. A commitment for title insurance was secured for the property as well. Plaintiffs made the payments on the loan but admit that they had no verbal, written, or electronic communication with Farm Credit or Hughes notifying them of the death of Kathleen Jones Smith or their interest in the property. In the absence of direct communication, Plaintiffs rely on the affidavits of heirship that referenced the decedent as *Katherine* J. Smith and were filed under the name of *Katherine* J. Smith. Plaintiffs insist that these documents constituted constructive notice of their interest. We disagree.

In *Young v. RAC Exp., Inc.*, No. E2005-01165-COA-R3-CV, 2006 WL 1699001, at *2 (Tenn. Ct. App. June 21, 2006), this Court considered whether plaintiffs were put on constructive notice of a lien against property owned by Tommy Heatwole when the judgment was recorded in the name of "Tommy Heatwold." Because of the misspelling, the judgment would not be in the chain of title, and the plaintiffs would not be charged with constructive notice. *Id.* at *3. The defendant asked this Court to apply "the doctrine of *idem sonans* (Latin for 'sounds like'), . . . such that if the two names are substantially similar, there should be no question of notice," regardless of the misspelling of the last name. *Id.* at *2. Essentially, the defendant argued that the two names were "similar enough that the plaintiffs [should] be charged with constructive notice." *Id.* at *3. The Court disagreed, reasoning that the burden of having the lien recorded correctly should be on the creditor, "rather than requiring those searching titles to consider every possible spelling/misspelling of a name." *Id.* "[T]o rule otherwise would 'tax all land abstractors beyond reasonable limits and require them to be poets, phonetic linguists, or multilingual specialists. The additional time necessary to examine name indexes under such a stringent doctrine would make the examinations financially prohibitive.'" *Id.* (quoting *Nat'l Packaging Corp. v. Belmont*, 547 N.E.2d 373 (Ohio Ct. App. 1988)). That concern is especially relevant here, where the affidavits of heirship did not simply contain a slight misspelling but stated an entirely different first name.

Even though the affidavits of heirship were outside the chain of title, Plaintiffs still argue that they provided actual or constructive notice of their interest to Hughes because the tax record in the title search file contained some reference to the location of the affidavits of heirship. Again, the document at issue was entitled "Real Estate Assessment Data," and it listed the property owner as "SMITH KATHLEEN J., PO Box 97." However, near the end of the printout, under "Sale Information," the document stated:

| Sale Date | Price | Book | Page | Vac/Imp | Type Instrument |
|---|---|---|---|---|---|
| 9/17/2017 | | 170 | 07145 | | HR |
| 8/17/2017 | | 170 | 07144 | | HR |

Plaintiffs claim that this was a reference to the location of the affidavits of heirship filed

under the name of Katherine J. Smith, and therefore, Hughes "knew, or should have known," of their interests. Again, we cannot agree. Despite this reference under sale information, this very document plainly stated that the owner of the property was still Kathleen J. Smith. "It is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies." Tenn. Code Ann. § 67-5-2502(b). This statute requires the property owner "to register the owner's own name and address with the assessor's office." *Ditto*, 488 S.W.3d at 273 n.11; *see also Wilson v. Blount Cty.*, 207 S.W.3d 741, 747 (Tenn. 2006). For more than four years following Ms. Smith's death, neither Glenver nor April took any steps to comply with this statute. Given the statement that the "Property Owner" was "SMITH KATHLEEN J," the isolated reference to instrument locations later in the tax document did not provide notice of Plaintiffs' interests. In conclusion, even assuming arguendo that Plaintiffs would qualify as interested parties under the statute, Hughes had no notice of their interests, so he was not required to list them in the advertisement of the sale pursuant to Tennessee Code Annotated section 35-5-104. Plaintiffs' arguments to the contrary are without merit.[8]

---

[8] We note that the statutes governing delinquent tax sales provide far more helpful guidance regarding the duties of a delinquent tax sale attorney in identifying interested persons. They provide:

> [(c)](2) The delinquent tax attorney shall make a reasonable search of the public records in the offices of the assessor of property, trustee, the register of deeds, and the local office where wills are recorded, seeking to identify and locate all interested persons as to each parcel listed on the county and municipal delinquent tax lists filed in the cause. . . .
> (3) The delinquent tax attorney shall make a diligent effort to give actual notice of the proceedings to all interested persons, as identified by the searches described in subdivision (c)(2).

Tenn. Code Ann. § 67-5-2502(c)(2)-(3). The statute further provides:

> "Diligent effort to give actual notice of the proceedings" means a reasonable effort to give notice which is reasonably calculated, under all the circumstances and conditions, to apprise interested persons of the pendency of the proceedings in time to afford them an opportunity to prevent the loss of their interest in the parcel. Such effort shall be such as one desirous of actually informing the persons might reasonably adopt to accomplish it. Such effort does not, however, require that an interested person receive actual notice. Nor does it require the plaintiff to search records or sources of information in addition to that information available in the specific offices listed in subdivision (c)(2)[.]

*Id.* at -2502(c)(1)(A). The statute defines "interested person" as follows:

> (B) "Interested person", "person owning an interest in a parcel" and "owner" means a person, including any governmental entity, that owns an interest in a parcel and includes a person, including any governmental entity, that holds a lien against a parcel or is the assignee of a holder of such a lien. "Interested person" also includes a person or entity named as nominee or agent of the owner of the obligation that is secured by the deed or a deed of trust and that is identifiable from information provided in the deed or a deed of trust, which shall include a mailing address or post office box of the nominee or agent.

- 17 -

### 3.     Terms of the Deed of Trust

Next, Plaintiffs argue that they were entitled to the "same notice" that Kathleen Jones Smith would have been entitled to receive pursuant to the following two sections of the deed of trust:

> The Borrower covenants and agrees . . .
>    . . . . (17) that the covenants, agreements and provisions herein contained shall be binding upon and inure to the benefit of the heirs, devisees, personal representatives, grantees, successors and assigns of the respective parties; (18) that wherever in this conveyance either the Borrower, the Lender, or the Trustee is named or referred to, such naming or reference includes all of the class and assigns, heirs, personal representatives, grantees, or successors of either, as the case may be . . . .

Plaintiffs interpret these sections to mean that if Kathleen Jones Smith was entitled to notice pursuant to the foreclosure statutes, then Plaintiffs were likewise entitled to notice under the statutes. According to Plaintiffs, these sections mean they were "parties interested" within the meaning of Tennessee Code Annotated section 35-5-104.

We are not persuaded by Plaintiffs' argument. Section (17) applies to the "covenants, agreements and provisions *herein contained*," (emphasis added), meaning, within the deed of trust. Section (18) similarly applies to a naming or reference "in this conveyance" to the trustee. Sections (17) and (18) do not alter the statutory advertising requirement in the event of foreclosure. In fact, section (12) of the deed of trust specifically addressed what would occur in the event of a default due to nonpayment of the indebtedness *or* a change of ownership. In either case, the lender was given the right to foreclose after advertising the sale "as required by state law."[9]

We also note that the inclusion of heirs as "Borrowers" for purposes of *the deed of trust* did not purport to obligate Plaintiffs to repay the separate promissory note or

---

> However, a person named as a trustee under a deed of trust, contract lien or security instrument, is not included in such definition unless the person has a separate interest in the parcel[.]

*Id.* at -2502(c)(1)(B).

[9] "[T]he parties can vary the terms of foreclosure by contract, and where a deed of trust provision varies from the statutory requirements, that term will generally supersede the statutory requirement." *Robilio*, 2008 WL 2502114, at *7. As such, "a trustee must comply with terms such as notice of time and place of sale, as well as personal notice of sale, if provided for in the deed of trust." *Id.* However, "where the time, place, and terms of sale are not fixed in the mortgage or deed of trust, then the same are governed by statute." *Galyon v. First Tenn. Bank Nat. Ass'n*, 803 S.W.2d 218, 219 (Tenn. 1991) (citing *Napier v. Stone*, 21 Tenn. App. 626, 114 S.W.2d 57, 61 (1937)).

otherwise result in them becoming "debtors" within the meaning of the foreclosure statute. Plaintiffs' arguments regarding the language in the deed of trust are without merit.

### 4.      Inadequacy of Price

We have already concluded that Hughes did not fail to comply with any notice requirements. However, Plaintiffs also argue that the sale price was grossly inequitable. "In order to set aside a foreclosure sale, the plaintiff must show more than inadequacy of the purchase price." *Conway v. E. Sav. Bank, FSB*, No. W2005-02919-COA-R3-CV, 2006 WL 3613605, at *4 (Tenn. Ct. App. Dec. 11, 2006). "It is well settled that, even when the sale price is shockingly disproportionate to the actual value of the property, inadequacy of the price alone is an insufficient basis on which to set aside a foreclosure sale." *Id.* at *7 (citing *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984); *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, 855 (Tenn. Ct. App. 2002)). "If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale." *Holt*, 688 S.W.2d at 416. "Courts do not set aside foreclosures lightly," and "the burden imposed upon a party seeking such relief is substantial." *Young v. Bank One, N.A.*, No. M2003-01359-COA-R3-CV, 2004 WL 2098284, at *1 (Tenn. Ct. App. Sept. 20, 2004).

The trial court correctly concluded that because Plaintiffs did not allege or prove any irregularity, misconduct, fraud, or unfairness on the part of Hughes that caused or contributed to an inadequate price, the foreclosure sale cannot be set aside. *See McKenzie v. Brandywine Homeowners' Ass'n, Inc.*, 589 S.W.3d 123, 123. (Tenn. Ct. App. 2019) (explaining that "the lone infirmity of a conscience shocking inadequate price" will not justify voiding a foreclosure sale) (internal quotation omitted).

### B.      *Motions to Dismiss filed by the Remaining Defendants*

### 1.      Farm Credit, Mr. and Mrs. Powers, Bartlett Mortgage, and Mr. Byrd

Although Plaintiffs' brief on appeal lists separate issues regarding these defendants, the argument section of its brief addresses Farm Credit, Mr. and Mrs. Powers, Bartlett Mortgage, and Mr. Byrd in one short section comprised of only four sentences. This section contains no citation to relevant authority or cites to the record. Plaintiffs simply argue that the trial court erred in granting these defendants' motions to dismiss because "the record clearly reflected that the subject foreclosure sale was unfair, irregular, and/or resulted from misconduct on the part of Mr. Hughes, as Trustee, and Farm Credit, as mortgagee, [that] drastically reduced the sales price for the property and enabled Mr. Weston and Mr. Hilliard to realize a short-term windfall profit[.]" According to Plaintiffs, "if they were able to establish at trial that Mr. Hughes' foreclosure sale should be set aside,"

then all subsequent deeds would be void.

We have already affirmed the award of summary judgment to Hughes, concluding that he did not fail to comply with the applicable statutes or deed of trust. However, even if he had, Tennessee Code Annotated section 35-5-106 clearly and unequivocally provides that the failure of "the officer, or other person making the sale," to pursue the provisions of "this chapter" shall not render the sale void or voidable. Section 35-5-107 "provide[s] relief for anyone affected by noncompliance with the foreclosure statutes," but the remedy prescribed is damages against that "officer, or other person," referenced in section 35-5-106. *McSwain*, 1994 WL 398819, at *2. "It is apparent that the legislature did not want uncertainty concerning land titles to prevail." *Id.*

Because Plaintiffs fail to develop any legitimate argument as to these defendants, we deem the issues regarding them waived. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010); *see also Lunsford v. K-VA-T Food Stores, Inc.*, No. E2019-01272-COA-R3-CV, 2020 WL 1527002, at *6 (Tenn. Ct. App. Mar. 31, 2020) (quoting *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

### 2.     Mr. Weston and Mr. Hilliard

Plaintiffs' argument regarding these defendants is likewise lacking. In a single sentence, with no cites to the record or relevant authority, Plaintiffs suggest that the trial court erred in dismissing the claims against these defendants "when they had not filed Motions for such relief." For the reasons stated above, this issue is also waived.

### C. Motion to Continue

The next issue we will consider is whether the trial court erred in denying Plaintiffs' motion to continue the summary judgment hearing in order allow Plaintiffs to take depositions. To briefly review the relevant timeline, the complaint was filed in October 2019, discovery ensued, Hughes moved for summary judgment in April 2020, and Plaintiffs moved to continue the hearing in May 2020, ten days before the scheduled hearing. The hearing was ultimately delayed until July 30, 2020. In the meantime, Plaintiffs had filed a response to the motion for summary judgment, and both sides had submitted written discovery responses in support of their positions. Still, Plaintiffs argued that they should be permitted to depose Hughes and representatives of Farm Credit prior to resolution of the motion for summary judgment. After considering the nature of the

additional discovery sought by Plaintiffs' counsel, the trial judge announced his oral ruling that he was exercising his discretion to deny the motion to continue and disallowing the depositions, and he later entered a written order to that effect.

"'If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07.'" *Greg Calfee Builders LLC v. MaGee*, 616 S.W.3d 545, 553 (Tenn. Ct. App. 2020) (quoting *Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015)). Rule 56.07 provides:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Tenn. R. Civ. P. 56.07.[10] This Rule "is intended to serve as an additional safeguard against an improvident or premature grant of summary judgment." *Kenyon v. Handal*, 122 S.W.3d 743, 753 n.7 (Tenn. Ct. App. 2003). We review the trial court's refusal to grant a continuance under Rule 56.07 for abuse of discretion. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009). The trial court's decision to deny the party's request for additional time for discovery "'must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made.'" *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 537-38 (Tenn. Ct. App. 2012) (quoting *Regions*, 310 S.W.3d at 401). The interest in full discovery "must be balanced against the purpose of summary judgment," which is to provide a quick, inexpensive way to conclude cases when no dispute exists regarding the material facts. *Id.* at 537. Accordingly, "a trial court only errs in refusing to grant additional time for discovery prior to the hearing on a motion for summary judgment when the non-moving party can show that 'the requested discovery would have assisted [the non-moving party] in responding to [the moving party's] motion for summary judgment.'" *Id.* at 538. (quoting *Regions*, 310

---

[10] Plaintiffs filed a joint affidavit stating that they should be allowed a reasonable opportunity to engage in meaningful pretrial discovery to include taking the depositions of Hughes and representatives of Farm Credit. They stated that everything in their Rule 56.07 motion and their statement of additional facts was "true and correct, and [] based upon our personal knowledge, information and belief, having been involved with the preparation of, and the proceeding with, this pending lawsuit." However, they did not state whether their attorney had made any attempt to take depositions in the time that the litigation had been pending. "[A]n affidavit submitted by a party seeking further discovery pursuant to Rule 56.07 need not contain evidentiary facts related to the substantive merits of the case; rather, it must explain why the nonmoving party has not been able to obtain and present the evidentiary material needed to oppose the summary judgment motion." *Fed. Nat'l Mortg. Ass'n v. Daniels*, 517 S.W.3d 706, 714 (Tenn. Ct. App. 2015). The joint affidavit submitted by Plaintiffs was dangerously close to being deemed insufficient by this Court. *See, e.g.*, *id*; *Koczera v. Steele*, No. E2015-02508-COA-R3-CV, 2017 WL 1534962, at *6 (Tenn. Ct. App. Apr. 28, 2017).

- 21 -

S.W.3d at 401).

On appeal, Plaintiffs argue that they should have been permitted additional time for discovery because "Farm Credit would have discoverable knowledge regarding the issues surrounding the death of Kathleen Jones Smith, the identity and mailing addresses of her heirs, communications Farm Credit may have had regarding her secured loan, etc[.]" Given the written discovery responses of both Glenver and April, though, we fail to see how additional time to conduct depositions would have assisted them in responding to the motion for summary judgment. In written discovery, both Glenver and April were asked to list all verbal, written, or electronic communication that they, or anyone on their behalf, had with Hughes or Farm Credit to notify them of the death of Kathleen Jones Smith. Both referenced the affidavits of heirship and making payments but admitted that they otherwise had no verbal, written, or electronic communication with Hughes or Farm Credit. Glenver and April were also asked to identify all communication they, or anyone on their behalf, had with Farm Credit at any point in time notifying it of their alleged interest in the property. Again, both mentioned the affidavits of heirship and payments but confirmed that they had no communication with Farm Credit. In the same manner, they confirmed that they had no communication with Hughes after his appointment as substitute trustee to notify him of their interest in the property. Hughes also stated in his affidavit that he was not aware of the death of Kathleen Jones Smith, as Plaintiffs never notified him of that fact, and he had no actual or constructive notice of her death.

On appeal, Plaintiffs argue that because Glenver and his father made payments on the loan after the death of Kathleen Jones Smith, then Farm Credit, by receiving those payments, "should have had records regarding the person or persons making such payments, and the origins and/or mailing addresses from which such payments came." However, because Plaintiffs admit that neither they nor anyone on their behalf notified Farm Credit or Hughes of the death of Kathleen Jones Smith or their inherited interest in the property, any potential record of Glenver or his father having mailed payments would not impact the issues on appeal. The trial court did not abuse its discretion in denying the motion to continue the hearing in order to allow depositions.

### D. Motion to Compel

As previously noted, Farm Credit had filed a motion to stay discovery until the trial court resolved its motion to dismiss for failure to state a claim, and in response, Plaintiffs filed a motion to compel Farm Credit to respond to discovery. On appeal, Plaintiffs offer no separate analysis with respect to their motion to compel Farm Credit to respond to discovery. At the end of the section of their brief addressing Rule 56.07, they simply argue that the trial court erred in denying their motion to compel as well. Thus, for the same reasons discussed in the previous section, regarding Plaintiffs' discovery responses confirming their lack of communication with Farm Credit, we discern no abuse of discretion in the trial court's denial of Plaintiffs' motion to compel Farm Credit to respond

to discovery. *See Battery All., Inc. v. Allegiant Power, LLC*, No. W2015-02389-COA-R3-CV, 2017 WL 401349, at *4 (Tenn. Ct. App. Jan. 30, 2017) ("A trial court's determinations regarding pre-trial discovery, including motions to compel, are reviewed under an abuse of discretion standard.").

## IV. CONCLUSION[11]

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Any remaining arguments are pretermitted. Costs of this appeal are taxed to the appellants, Glenver Ian Smith and April La'Vera Smith, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[11] To the extent that Plaintiffs attempt to raise additional issues in their reply brief, those issues are waived. *See Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) ("Issues raised for the first time in a reply brief are waived.").